Mark E. **BENJAMIN,** Appellant–Defendant,

v.

**CITY OF WEST LAFAYETTE,** Appellee–Plaintiff.

No. 79A04–9803–CV–124.

Court of Appeals of Indiana.

Nov. 30, 1998.

Mark E. Benjamin, Pro se.

Nancy Hathaway, Gambs, Mucker, Bauman & Seeger, Lafayette, for Appellee–Plaintiff.

## OPINION

BAKER, Judge.

Appellant-defendant, Mark E. Benjamin appeals the trial court's judgment entered in favor of the City of West Lafayette (the City) for violating certain provisions of the City's zoning ordinance which permitted no more than three unrelated adults to live in a single-family residence. While Benjamin presents numerous issues on appeal, we have consolidated them as follows: 1) whether the judgment was erroneous because the City failed to exhaust administrative remedies set forth in the zoning statutes prior to commencing the litigation in the trial court; 2) whether the City's occupancy ordinance is void for vagueness in that Benjamin did not receive adequate notice of the ordinance vio-

lations; 3) whether the City was without authority to fine Benjamin for providing false information in required occupancy affidavits; and, finally, 4) whether the trial court failed to credit Benjamin with $200 in the final judgment that the City had been ordered to pay.

We observe at the outset that this panel is not called upon to decide the validity of the City's occupancy ordinance pursuant to the Equal Privileges Clause of Article I, section 23 of the Indiana Constitution, unlike that presented in *Dvorak, et. al v. City Of Bloomington,* 702 N.E.2d 1121 (1998). Nor was this panel presented with the question of whether the ordinance offends the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977). Thus, we express no opinion as to these issues.

### FACTS [1]

The facts most favorable to the judgment reveal that Benjamin owned two houses in West Lafayette, both of which he rented to college students. The dwelling located at 807 Elm Drive is situated in an "R–1" district which was established to include low density single-family residences. The house on 421 Chauncey Street is in an "R–2" district which was established to include medium density single and two-family residences. Benjamin has maintained a number of rental properties in the City over the past twenty years.

In accordance with the City's Unified Zoning Ordinance, "family" is defined as "one or more persons related by blood, marriage or adoption and not more than two unrelated natural persons living as a single housekeeping unit." R. at 2283. As a consequence, no more than three unrelated persons could live at either of Benjamin's residences without violating the ordinance. Additionally, the ordinance provided that if an owner or possessor of the property permitted a violation of the occupancy provisions, the City could im-

pose a fine in the amount of not less than $10.00 nor more than $300. Moreover, the ordinance provided that a separate violation resulted each day that the occupancy ordinance was permitted to be violated.

In September of 1993, a neighbor of 807 Elm complained to the City that more than three people were living at that address. An investigation conducted by the City revealed that four Purdue University students listed that address as their residence. Thereafter, Benjamin provided the City with an incorrect occupancy affidavit which stated that only three individuals resided there.[2] While three persons were originally listed on the lease, Benjamin received and deposited a rental payment from a fourth tenant before he had completed the affidavit. The City code provided that the failure to furnish an accurate occupancy certificate constituted an ordinance violation and provided a civil penalty of not less than $200 nor more than $500. Each day that a violation occurred, a separate and distinct violation of the ordinance resulted.

During the 1992–1993 school year, three tenants were listed on the lease at the Chauncey street premises. However, at one point, six tenants actually resided there, including two brothers. Throughout the school year, at least four unrelated Purdue students continuously lived at the Chauncey address. At one point, Benjamin warned the residents of impending occupancy investigations by the City and told them to make it appear as though only three people lived at that address.

On April 28, 1995, the City filed an amended complaint[3] against Benjamin alleging, *inter alia,* that he violated the occupancy ordinance by permitting more than three unrelated persons to reside at each of the addresses and that Benjamin violated another provision of the ordinance in that he knowingly and deliberately submitted occupancy affidavits to the City which contained incorrect information. The City requested

---

1. Oral argument was heard in this cause on October 27, 1998, in Indianapolis. We note that the argument in *Dvorak* concluded approximately fifteen minutes before argument commenced in the instant case.

2. Benjamin permitted only three tenants to sign the lease at each of the residences.

3. This was the City's third amended complaint filed against Benjamin.

that fines be imposed from September 21, 1993 through December 15, 1993, for a total of seventy-six occupancy violations at 807 Elm. Additionally, the City requested the imposition of fines at 421 Chauncey for the school years 1992–1993 and 1993–1994. Specifically, the City sought fines for 544 violations at that address.

Following a two-day trial by the court which commenced on September 29, 1997, the trial court found for the City and imposed fines for 420 violations against Benjamin with respect to occupancy violations at 421 Chauncey. The court set the fines for these violations at $25 per day. The trial court also determined that seventy-six violations occurred at 807 Elm Drive and imposed a fine of $25 per day for those violations. Additional fines were imposed for providing false affidavits. Thus, the total amount of the fines awarded for the ordinance violations was $13,400. Benjamin now appeals.

## DISCUSSION AND DECISION

### I. Exhaustion of Administrative Remedies

Benjamin first attacks the judgment claiming that the City failed to follow the procedures for the exhaustion of administrative remedies under the zoning statute before it commenced litigation in the trial court. Specifically, Benjamin asserts that the City's claims rested exclusively within the Board Of Zoning Appeal's (BZA) jurisdiction pursuant to IND. CODE § 36–7–4–918.1 [4] which provides for review by that agency before judicial review in the trial court may be obtained.

In support of his argument, Benjamin points to Article II, § 112.29 of the West Lafayette City Code which contains the provisions regarding notice and administrative appeals:

In the event any inspection reveals a deficiency with the application of the codes

referenced herein, the engineering department shall within ten days from the date of the set inspection notify the landlord of the subject property of the deficiencies and shall apprise and fix a time period within which all code compliance and repairs shall be made. Any person so notified shall have the right of appeal to the board of Housing/Property Maintenance Code appeals as provided in the ordinances ...

While the above provides for a notice and an administrative appeal, the portion of the ordinance quoted above applies only in those instances where the finding of a code violation is the result of a scheduled biannual inspection. To illustrate, Article II, § 112.27 of the code provides that:

[f]or the purposes of this article, the city engineer shall divide the city into inspection districts and shall prepare a schedule of the order in which such districts shall be taken for *systematic inspection* coverage ...

(Emphasis added).

■ Here, there is no evidence to suggest that the City discovered the occupancy violations during any "systematic inspection" as contemplated by the ordinance. Rather, the violations at 807 Elm were initially found as a result of a neighbor's complaint. R. at 1125, 1136. Additionally, the over occupancy at 421 Chauncey was discovered after six individuals wrote checks payable to the West Lafayette Sewage department. R. at 1148–49.

Notwithstanding the ordinance provisions cited above, Benjamin cites to a number of cases for the proposition that exhaustion of administrative remedies is required before judicial review becomes available. Such cases do not apply in the instant case, inasmuch as they discuss those circumstances in

---

4. This statute provides as follows: "A board of zoning appeals shall hear and determine appeals from and review:
 (1) Any order, requirement, decision, or determination made by an administrative official, hearing officer, or staff member under the zoning ordinance;
 (2) Any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in rela-

tion to the enforcement of the zoning ordinance; or
 (3) Any order, requirement, decision, or determination made by an administrative board or other body except a plan commission in relation to the enforcement of an ordinance adopted under this chapter requiring the procurement of an improvement location or occupancy permit."

which administrative remedies are required to be exhausted in accordance with the Administrative Adjudication Act (AAA) or some other statutory provision. *See Austin Lakes Joint Venture v. Avon Util. Inc.,* 648 N.E.2d 641, 644 (Ind.1995) (trial courts are "completely ousted" of subject matter jurisdiction if a party is required by the AAA to exhaust administrative remedies); *Evansville–Vanderburgh Sch. Corp. v. Roberts,* 464 N.E.2d 1315, 1319 (Ind.Ct.App.1984) (trial court was statutorily precluded from making a de novo determination as to whether school corporation committed unfair labor practices).

We also note that IND. CODE. § 36–7–4–1014 specifically allows the City to seek enforcement of its occupancy ordinance in the trial court:

(a) The plan commission or any enforcement official designated in the zoning ordinance may bring an action *in the circuit or superior court of the county to invoke any legal, equitable, or special remedy for the enforcement of this chapter or any ordinance adopted or action taken under this chapter.*

(b) The plan commission or any enforcement official designated in the zoning ordinance *may also bring an action in the circuit or superior court of the county to enforce ... conditions imposed under this chapter.*

&ast; &ast; &ast; &ast; &ast; &ast;

(e) *An action for the levy of a fine or penalty for enforcement of a zoning ordinance may be brought in any court located within the jurisdiction of the plan commission.*

(Emphasis added). Moreover, a companion statute, I.C. § 36–7–4–1013 contemplates that a City will pursue the enforcement of ordinances in the trial court:

When the legislative body provides penalties for failure to comply with any ordinance, the municipal attorney ... shall, on receipt of information of the violation of any ordinance make an investigation of the alleged violation. If facts elicited by the investigation are sufficient to establish a reasonable belief that a violation has occurred on the part of the party investigat-

ed, the municipal attorney ... may file a complaint against the person and prosecute the alleged violation.

From the above, it is apparent that the City followed the appropriate enforcement mechanism for violation of the occupancy ordinance. As a result, the trial court properly concluded that the City's enforcement of the over occupancy violations was pursuant to the applicable statutes and the ordinance. Therefore, Benjamin's argument that the City failed to exhaust administrative remedies prior to commencing the action in the trial court, must fail.

*II. Vagueness of Ordinance*

Benjamin next contends that the City's occupancy ordinance is void for vagueness. Specifically, he contends that the ordinance fails to specify what degree of familial relationship is permitted under the ordinance and, as a result, the evidence was insufficient to prove the violation. Additionally, Benjamin asserts that the City failed to show that he permitted any over occupancy by the tenants.

▆▆ We initially observe that zoning ordinances are generally construed to be held valid where possible. *Carpenter v. Whitley County Plan Comm'n,* 174 Ind.App. 412, 419, 367 N.E.2d 1156, 1161 (1977). Ordinances are construed to ascertain and effectuate the intent of the local legislative body. *Metropolitan Dev. Comm'n of Marion County v. The Villages, Inc.,* 464 N.E.2d 367, 369 (Ind. Ct.App.1984), *cert. denied* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171. As Benjamin is essentially challenging the sufficiency of the evidence, we note that when reviewing the trial court's judgment, this court construes the findings liberally in support of the judgment. *Benefit Trust Life Ins. Co. v. Waggoner,* 473 N.E.2d 646, 648 (Ind.Ct.App. 1985). We will disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Chidester v. City of Hobart,* 631 N.E.2d 908, 910 (Ind.1994). Moreover, we do not reweigh the evidence or judge the credibility of witnesses. Rather, we examine the evidence favorable to the judgment and all reasonable inferences which can be drawn

from it. *Id.* If substantial evidence of probative value supports the judgment, it will not be set aside. *Wallace v. Estate of Davies,* 676 N.E.2d 422, 426 (Ind.Ct.App.1997), *trans. denied.*

■ As noted in the *FACTS,* a plain reading of the ordinance defining "family" requires either a specific degree or relationship between the residents or that the number of residents be limited. Here, we note that the trial court specifically found that the tenants who resided on the Elm Drive premises were unrelated. Although the City did not inquire of the former tenants at trial as to whether they were related to each other, the record reveals that Benjamin received, accepted, endorsed and deposited rental payments from four unrelated individuals who resided at that address. R. at 1379. The City discovered that all were graduate students at Purdue. R. at 1737–40. Although only three individuals were listed on the lease as residents, the total rental amount at this address was $900 which was split four ways at $225 per month. R. at 2407, 2477. Moreover, Charles Riggle, a plumber who performed occasional work for Benjamin, testified that Benjamin knew he was in violation of the occupancy ordinance, but seemed unconcerned because the City could not prove it. R. at 1852–56; 1875–76.

Similarly, only three tenants were listed on the lease at the Chauncey Street address during the 1992–1993 school year. R. at 2039. However, a total of six students lived at the house during the school year. Although two brothers resided there, the evidence showed that the other tenants were unrelated. R. at 1784–88, 1914, 2057, 2084. The record also reveals that Benjamin actively "closed his eyes and ears," inasmuch as the evidence showed that he was aware of impending occupancy investigations and specifically told the tenants to make it appear as though only three people lived on the property. R. at 1904, 1955–56. On one occasion, a tenant told Benjamin that more than three

unrelated people were going to reside at the Chauncey street address. Benjamin responded that he did "not want to know anything." R. at 1935. The evidence also showed that the rent on the Chauncey Street property was in excess of $1140 per month and Benjamin received multiple checks each month of approximately $200 each in rent. R. at 2099.

In light of the above, the evidence amply supports the trial court's determination that more than three unrelated adults resided at the Elm Drive and Chauncey Street addresses. Although Benjamin, through a cursory inquiry, could have discerned whether any familial relationship existed between the residents at his properties, he did not. Such an inquiry would have enabled Benjamin to determine who were actual residents and who were simply guests of those residents. Moreover, Benjamin's awareness and knowledge of the over occupancy violation is amply established by the record. As a result, we conclude that the evidence was sufficient to demonstrate that over occupancy existed on the properties and that Benjamin violated the ordinance in that he permitted such over occupancy.

### III. Imposition of Fines for Violations

Benjamin next asserts that the City acted without authority in imposing fines against him for providing false information on occupancy affidavits regarding the number of individuals who resided at the Elm Drive and Chauncey Street properties.[5] Specifically, Benjamin contends that the allegations regarding submission of false information in the occupancy affidavits amounted to a charge for perjury which, therefore, precluded the City from imposing any penalty for criminal conduct.

■ I.C. § 36–1–3–8 [6] withholds from municipalities the power to impose a penalty for criminal conduct. Additionally, in *Mitsch v. City of Hammond,* 234 Ind. 285, 290, 125

---

5. West Lafayette City Code § 112.24 provides that: "[i]t shall be a violation of this chapter to fail to provide this information, to provide incorrect information or fail to provide updated information within ten days after a request for updated information."

6. "A [municipality] does not have the following: ... (8) The power to prescribe a penalty for conduct constituting a crime or infraction under statute."

N.E.2d 21, 24 (1955), our supreme court determined that "[C]ities and towns are forbidden ... from punishing by ordinance any act which is made a public offense by statute and that such an ordinance is void." Although a municipality may not impose regulations which are in conflict with rights granted or reserved by the General Assembly, it may supplement burdens imposed by state law, provided that such additional burdens are logically consistent with the statutory purpose. *Board of Pub. Safety v. State ex rel. Benkovich,* 180 Ind.App. 294, 297, 388 N.E.2d 582, 585 (Ind.Ct.App.1979).

■ In the instant case, Benjamin maintains that the conduct alleged by the City fell exclusively within the definition of our Perjury statute, I.C. § 35–44–2–1(a), which defines this offense as "mak[ing] a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true." Pursuant to the ordinance, a violation occurs if a person fails to provide requested information in the occupancy affidavit, provides incorrect information, or fails to provide updated information following the City's request to do so.

When examining these provisions, it is apparent that Benjamin's conduct in providing incorrect information on the occupancy application may or may not constitute the offense of perjury. In *Gardner v. State,* 229 Ind. 368, 376–77, 97 N.E.2d 921, 922–23 (1951), our supreme court observed that perjury is a very specific offense that encompasses much more than a mere misstatement. Specifically, the *Gardner* court observed that:

In a prosecution for perjury ... it has long been the law in Indiana that the evidence must not only show the defendant swore falsely in fact, but also that he did so willfully, corruptly and knowingly. If he carelessly swore to a fact that if he had been more cautious he would have learned to be false, it is not perjury. His negligence or carelessness in coming to a conclusion without taking pains to ascertain the truth of the facts to which he swears does not make his oath corrupt.

As noted above, an individual who negligently fails to provide accurate information or inadvertently provides incorrect informa-

tion does not commit perjury as defined by I.C. § 35–44–2–1. Moreover, the provisions of the ordinance regarding the failure to provide the requested information relate to distinct behavior, other than that which is defined in the perjury statute. As a result, the ordinance simply requires an occupancy affidavit to be signed under penalties for perjury which has the effect of supplementing the statute defining perjury. Thus, it was proper to impose a fine upon Benjamin for providing false information in the occupancy affidavits and there is no violation of I.C. § 36–1–3–8.

## IV. $200 Credit

Finally, Benjamin contends that the trial court erroneously failed to credit him with $200 that the City had been ordered to pay. Specifically, Benjamin maintains that the trial court ignored its order of June 28, 1995, which provided that he would be credited with that amount against any obligation that he may ultimately have owed to the City.

Our review of the record reveals that the trial court issued the following order:

[T]he sum of $200.00 should be paid by the city to defendant or given as credit to the defendant by the city for any obligation which may be determined in the course of these proceedings that the defendant owes to the city.

Record at 257. In light of an apparent oversight by the trial court, such a "credit" is not reflected in the final judgment. We also note that the City does not allege that this amount has been actually paid to Benjamin. As a result, we are compelled to remand this cause to the trial court with instructions that the judgment be corrected to reflect a credit to Benjamin in the amount of $200.

## CONCLUSION

In light of our disposition of the issues set forth above, we conclude that the City was not obligated to exhaust additional administrative remedies before filing its complaint against Benjamin in the trial court. Additionally, we note that the evidence supported the trial court's determination that Benjamin permitted more than three unrelated adults

to reside at the Elm Drive and Chauncey Street properties in violation of the City's occupancy ordinance. We further observe that the City properly fined Benjamin for providing incorrect information in the occupancy affidavits. Finally, we conclude that this case must be remanded to the trial court with instructions that it correct the final judgment to reflect a $200 credit in favor of Benjamin.

The judgment is affirmed, but this cause is remanded to the trial court with instructions that it correct the total judgment award to reflect a "credit" for Benjamin in the amount of $200.

DARDEN and BAILEY, JJ., concur.