**CRACKER BARREL OLD COUNTRY STORE, INC., Appellant–Defendant,**

v.

**TOWN OF PLAINFIELD, Indiana, on Behalf of the PLAINFIELD PLAN COMMISSION, Appellee–Plaintiff.**

No. 32A01–0507–CV–296.

Court of Appeals of Indiana.

May 24, 2006.

Transfer Denied Sept. 7, 2006.

---

Michael A. Wukmer, Brian E. Bailey, Ice Miller, Indianapolis, for Appellant.

Melvin R. Daniel, James B. Chapman II, Dann Pecar Newman & Kleiman, P.C., Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Cracker Barrel Old Country Store, Inc. (Cracker Barrel) appeals the trial court's grant of summary judgment entered in favor of the appellee-plaintiff Town of Plainfield (Plainfield), which determined that Cracker Barrel's pole sign must be removed from its premises. Specifically, Cracker Barrel argues that the trial court erroneously determined that its sign lost its status as a legally established nonconforming structure in accordance with Plainfield's zoning ordinance (the Ordinance) when it had performed maintenance on the sign. Concluding that the trial court properly determined that Cracker Barrel lost its status as a nonconforming use under the Ordinance when it removed its sign from the pole, we affirm the entry of summary judgment for Plainfield.

### FACTS

In 1992, Cracker Barrel opened a restaurant and gift shop in Hendricks County near the interchange of I–70 and State Route 267. Cracker Barrel received permission from the Hendricks County Planning and Building Department to construct a free-standing highway identification sign on its property. In the permit application, Cracker Barrel indicated that its pole sign would stand 150 feet tall, with a surface area of approximately 650 square feet, at an estimated cost of $89,000. The sign matched these specifications, and it consisted of two surfaces, a cabinet, internal lighting, and a pole.

Sometime thereafter, an annexation occurred, whereby Cracker Barrel came under Plainfield's jurisdiction. In 1998, Plainfield enacted Ordinance No. 21–97. It was subsequently determined that Cracker Barrel's sign violated the provisions of the Ordinance because it exceeded

height and surface area limitations. However, Cracker Barrel's sign qualified as a pre-existing, legally established, non-conforming structure as defined in the Ordinance.

In 2002, when the sign's surface needed to be replaced, Cracker Barrel's contracting consultant contacted Plainfield's Director of Planning, J. Higbee, about performing work on the sign. Higbee took the position that Cracker Barrel would be permitted under the Ordinance's "safe harbor" provision to "reface" the existing surfaces without removing them from the structure. No permit was required to perform this work so long as Cracker Barrel "swapped out existing panels [i.e., the sign surfaces] with same type and size new panels." Appellant's App. p. 589. However, various representatives from Plainfield informed Cracker Barrel personnel that if the restaurant removed the cabinet from the sign structure, the sign would lose its pre-existing, legally established, non-conforming use status. In a fax, Cracker Barrel's sign contractor indicated that "Mr. Higbee advises that both pylon signs at this site are there by grace of the 'legally non-conforming use' articles of the codes, as square footage and height exceeded current limitations. To reface these existing cabinets, without removing them from the structure, would be permissible as maintenance." Appellant's App. p. 199, 588.

On September 16, 2002, Cracker Barrel's contractor began work on the sign. The work order directed that the sign cabinet was to remain atop the pole during the repairs. Specifically, Cracker Barrel's consultant advised that the nonconforming use status goes "out the window if the cabinets are removed." Appellant's App. p. 198, 587. Notwithstanding these instructions, the contractor—at Cracker Barrel's request—detached the sign cabinet from the top of the sign and temporarily lowered it to the ground, apparently for safety reasons. The contractor removed the existing sign surfaces from the frame and replaced them with new ones. Thereafter, the sign was reaffixed to the top of the pole.

On October 2, 2002, Plainfield served Cracker Barrel with notice of a zoning violation. Specifically, Plainfield informed Cracker Barrel that its temporary detachment of the sign cabinet constituted a violation of the Ordinance. As a consequence, enforcement of the ordinance would reduce the sign from a height of 150 feet to 6 feet and the square footage from 652 feet to 48 feet.

When Cracker Barrel refused to remove its sign, Plainfield initiated an action against Cracker Barrel in the trial court, alleging that the sign had lost its status as a pre-existing nonconforming use. Specifically, Plainfield alleged that "the movement of the sign structure to the ground and the removal of the sign's surface from its frame violated the provisions of the Ordinance and resulted in the Tall Pole Sign losing its classification as a pre-existing nonconforming sign." Appellant's App. p. 17. Hence, Plainfield requested that the trial court order Cracker Barrel to completely dismantle and remove the sign. Cracker Barrel denied the allegations and asserted a counterclaim against Plainfield, contending that Plainfield's interpretation and enforcement of the Ordinance amounted to an unconstitutional taking of Cracker Barrel's property.

Thereafter, Plainfield filed a motion for summary judgment, arguing that: (1) Cracker Barrel's sign violated the Ordinance as a matter of law because of the manner in which Cracker Barrel replaced its sign surfaces; (2) the plain language of the Ordinance established Cracker Barrel's violation; and (3) Cracker Barrel

could not reasonably argue that it suffered any unfair prejudice as a result of the enforcement of the Ordinance.

Cracker Barrel filed a cross-motion for summary judgment, arguing that: (1) it did not move the sign within the meaning of the Ordinance because the sign remained in exactly the same location and position where it had always been; (2) Cracker Barrel only performed routine maintenance on its sign. that is permitted under the Ordinance; (3) Plainfield has cited an incorrect legal standard for the trial court's review and interpretation of the Ordinance; (4) the Ordinance did not prohibit Cracker Barrel's manner of re-placing the sign surfaces; and (5) the enforcement of Plainfield's Ordinance amounted to an unconstitutional taking of its property.

Following argument on June 3, 2005, the trial court granted Plainfield's motion for summary judgment, concluding that the work performed by Cracker Barrel consti-tuted a "moving" within the terms of the Ordinance, which caused the sign to lose the status of a "pre-existing, legally estab-lished, nonconforming use." Appellant's App. p. 10. Moreover, the trial court con-cluded that Cracker Barrel's replacement of the sign surfaces did not come within the definition of "maintenance" under the "safe harbor" provisions of the Ordinance, and that the enforcement of the Ordinance did not amount to a taking. *Id.* As a result, the trial court ordered Cracker Barrel to remove its sign from the proper-ty within sixty days of its order.[1] Cracker Barrel now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

When reviewing the trial court's grant of summary judgment, we apply the same standard the trial court applied. Sum-mary judgment is appropriate if the plead-ings and evidence submitted demonstrate there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. We construe the pleadings, affidavits, and designated evidence in the light most favorable to the non-moving party, and the moving party has the burden of demonstrating the ab-sence of a genuine issue of material fact. *Wilson v. Royal Motor Sales, Inc.,* 812 N.E.2d 133, 135 (Ind.Ct.App.2004). Be-cause a trial court's grant of summary judgment comes to us clothed with a pre-sumption of validity, the appellant must persuade us that error occurred. *Id.* Nev-ertheless, we carefully scrutinize motions for summary judgment to ensure that the non-moving party was not improperly de-nied her day in court. *Id.* If the trial court's entry of summary judgment can be sustained on any theory or basis in the record, we must affirm. *Irwin Mortgage Corp. v. Marion County Treasurer,* 816 N.E.2d 439, 442 (Ind.Ct.App.2004).

Additionally, any doubt as to the exis-tence of an issue of material fact, or an inference to be drawn from the facts, must be resolved in favor of the nonmoving par-ty. *Cowe v. Forum Group, Inc.,* 575 N.E.2d 630, 633 (Ind.1991). Although the nonmovant has the burden of demonstrat-ing that the grant of summary judgment was erroneous, we carefully assess the tri-al court's decision to ensure that the non-movant was not improperly denied his or her day in court. *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 667 (Ind.1997).

We also note that the trial court entered specific findings of fact and conclusions of law in its order granting summary judg-

---

1. Pursuant to Cracker Barrel's motion, the trial court stayed its order and judgment pending appeal on July 6, 2005. Appellant's App. p. 596–97.

ment for Plainfield. While such findings and conclusions are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App. 2000). Rather, a grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

## II. Cracker Barrel's Claims

### A. "Movement" of the Sign and Maintenance

■ Cracker Barrel argues that summary judgment was improperly granted in favor of Plainfield because the designated evidence failed to demonstrate that it lost its status as a legally established nonconforming structure under the Ordinance. Specifically, Cracker Barrel maintains that the designated evidence submitted to the trial court established that the sign was not "moved" within the meaning of the Ordinance when the work was performed. Moreover, Cracker Barrel asserts that the work it performed on the sign qualified as "maintenance" under the Ordinance and, therefore, it was protected under its "safe harbor" provision. Appellant's Br. p. 9–10.

■ In resolving these issues, we initially observe that the interpretation of a zoning ordinance is a question of law. *Story Bed & Breakfast, LLP v. Brown County Area Plan Comm'n*, 819 N.E.2d 55, 65 (Ind.2004). Ordinary rules of statutory construction apply in interpreting the language of a zoning ordinance. *Id.* That is, an ordinance is to be interpreted as a whole, and we will give words their plain, ordinary, and usual meaning. *Metro Dev. Comm'n of Marion County v. Pinnacle Media, LLC*, 836 N.E.2d 422, 425 (Ind. 2005). Because zoning ordinances limit

the free use of property, they are in derogation of the common law and must be strictly construed. *Story Bed & Breakfast*, 819 N.E.2d at 66. To be sure, our courts interpret an ordinance to favor the free use of land and will not extend restrictions by implication. *Saurer v. Bd. of Zoning Appeals*, 629 N.E.2d 893, 898 (Ind. Ct.App.1994). Hence, when a zoning ordinance is ambiguous, it should be construed in favor of the property owner. *Story Bed & Breakfast*, 819 N.E.2d at 66. By the same token, zoning ordinances are generally construed to be held valid where possible. *Benjamin v. City of West Lafayette*, 701 N.E.2d 1268, 1272 (Ind.Ct.App.1998). Every word in an ordinance must be given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute. *ModuForm, Inc. v. Harry H. Verkler Contractor, Inc.*, 681 N.E.2d 243, 248 (Ind.Ct.App.1997).

■ We also note that a nonconforming use has been construed to constitute a use of property that lawfully existed prior to the enactment of a zoning ordinance that continues after the ordinance's effective date even though it does not comply with the ordinance's restrictions. *Pinnacle Media, LLC*, 836 N.E.2d at 425. The extent to which a change in a nonconforming use is permissible depends upon the provisions of the zoning regulation, the nature of the uses in question and the facts of the particular case in question. *Jacobs v. Mishawaka Bd. of Zoning Appeals*, 182 Ind.App. 500, 395 N.E.2d 834, 836 (1979). As our Supreme Court explained in *Ragucci v. Metropolitan Dev. Comm'n of Marion County*, 702 N.E.2d 677, 679 (Ind.1998):

The ultimate purpose of zoning ordinances is to confine certain classes of uses and structures to designated areas. Because nonconforming uses by definition detract from the fulfillment of that

purpose, zoning ordinances properly seek to restrain them. In light of this important purpose, *Indiana courts have refused to permit the expansion of or changes in nonconforming uses in a variety of factual situations.*

(Emphasis added). To that end, the policy of zoning ordinances is to secure the gradual or eventual elimination of nonconforming uses and to restrict or diminish, rather than increase, such uses. Such policy embodied in a zoning ordinance is important to the trial court in determining the extent and character of changes that will not destroy the character of a nonconforming use. *Berkey v. Kosciusko County Bd. of Zoning Appeals,* 607 N.E.2d 730, 732 (Ind. Ct.App.1993). Hence, nonconforming uses are not generally favored because they detract from attainment of that purpose. *Misner v. Presdorf,* 421 N.E.2d 684, 686 (Ind.Ct.App.1981).

Turning to the relevant sections of the Ordinance here, we first note that Article 1.8, the provision that pertains to the interpretation of its language, states that:

> [T]he provisions of this Ordinance shall be held to be the minimum requirements for the promotion of the health, safety, comfort, morals, convenience, and the general welfare of the public. *In the case of any conflict or inconsistency between two or more provisions of this Ordinance … or any other ordinance of the Town of Plainfield, the provision which imposes the greater or higher or more restrictive standard of performance shall control.*

(Emphasis added). Article 13 of the Ordinance goes on to define the following terms:

> SIGN STRUCTURE: Any *Structure* including supports, uprights, bracing and framework which supports or is capable of supporting any *Sign.*

> SIGN: Any *Structure,* fixture, placard, announcement, declaration, device, demonstration or insignia used for direction, information, identification or to advertise or promote any business, product, goods, activity, services or interests.

> SIGN SURFACE: The surface of the *Sign* upon, against, or through which the message of the *Sign* is exhibited.

> STRUCTURE: Anything constructed or erected, the use of which requires location on the ground, or attachment to something having a fixed location on the ground. Among other things, *Structures* include *Buildings,* mobile homes, walls, *Parking Areas, Signs* and *Billboards.*

(Emphases in original).

The Ordinance also contains a "safe harbor" clause in Article 7.8(B), which provides that "Nothing contained in this Ordinance shall be construed to prevent the maintenance, repainting or posting of legally established Signs. Maintenance shall include the replacement of *Sign Surfaces* within a *Sign Structure* provided that the *Sign Structure* is not removed or changed in any dimension." Addendum 18.

Additionally, Article 9.1(E)(3), the portion of the Ordinance that pertains to nonconforming buildings or structures, provides that:

> Where a *Legally Established Nonconforming Building* or *Structure* exists on the effective date of this Ordinance that could not be built under the terms of this Ordinance by reason of restrictions on: *Gross Floor Area; Lot Coverage; Building Height* limitations; front, side and rear *Setbacks* and *Yards;* location on the *Lot;* bulk; or other provisions of this Ordinance applicable to the *Building* or *Structure,* such *Building* or *Structure* may continue to exist so long as it remains otherwise lawful, subject to compliance with the following provisions:

. . .

3. should such *Building* or *Structure* be moved for any reason for any distance whatsoever, such *Building* or *Structure* shall thereafter conform to the provisions of this Ordinance.

(Emphasis in original).

Finally, Article 9.1(I) of the Ordinance permits the repair and maintenance of a legally established nonconforming structure and states:

On any *Legally Established Nonconforming Building* or *Structure*, or portion of a *Building* or *Structure* containing a *Legally Established Nonconforming Use*, work may be done on ordinary repairs or on the repair or replacement of non-bearing walls, fixtures, wiring or plumbing, provided that the cubic feet content existing when the Building or Structure, or portion of a Building or Structure containing a Legally established Nonconforming Use became nonconforming shall not be increased.

If a *Legally Established Nonconforming Building* or *Structure* or portions of a *Building* or *Structure* containing a *Legally Established Nonconforming Use* becomes unsafe or unlawful by reason of physical condition and is razed, such *Building* or *Structure* shall not thereafter be rebuilt or used except in conformity with the provisions of this Ordinance.

When applying the above provisions to the circumstances here, it is apparent that Article 9.1(E)(3) makes it clear that a "structure" loses its pre-existing, legally established non-conforming use status if it is moved for any reason and for any distance. It is undisputed under the definitions that Cracker Barrel moved its "sign" and "sign structure," i.e., the cabinet and framework that housed the sign surface.

Hence, under the plain language of the Ordinance, that movement caused the pole sign to lose its non-conforming use status. However, Cracker Barrel urges that we must look beyond the terms of the Ordinance to determine whether a violation was actually committed because it maintains that the entire pole had to be moved before a violation of the Ordinance could occur. Were we to adopt that position, we would necessarily have to disregard the definition of the term "structure" in Article 13 of the Ordinance, which includes an "attachment to something having a fixed location on the ground." This we will not do, and Cracker Barrel's argument fails on this basis.

■ We also note that there is no support for Cracker Barrel's claim that it was merely performing permissible "maintenance" on the sign as defined by Article 7.8(B) of the Ordinance. Indeed, there is no dispute that, when replacing the surfaces of the sign, Cracker Barrel removed the sign structure from the pole and lowered it to the ground. Appellant's App. p. 191–96. Cracker Barrel's counsel acknowledged that "the contractor removed the sign faces and its frame from the sign structure and brought it to the ground in order to perform its repair work." *Id.* at 195–96. Hence, Cracker Barrel's actions fell squarely within the terms of the Ordinance that precluded it from claiming that it was performing maintenance on the sign. To be sure, the designated evidence established that Cracker Barrel's contractor removed the sign's structure, which included the surface cabinet, framework, and support, in order to replace the sign surfaces. Therefore, the safe harbor provision of the Ordinance regarding maintenance of the sign does not apply in these circumstances.[2]

---

**2.** Although the work performed may very well have constituted "maintenance" under Article

As an aside, we also reject Cracker Barrel's claim that the trial court's ruling in this instance rendered the safe harbor provision in the Ordinance meaningless. For instance, the repainting of the sign's pole could constitute permissible maintenance under Article 7.8(B) quoted above. Additionally, Cracker Barrel could have replaced the light bulbs that illuminate the sign's surfaces without lowering the sign structure. And, even more compelling, Cracker Barrel could have replaced the sign surfaces without moving the structure that housed the sign surfaces to the ground, which may also have come within the safe harbor provision of Article 7.8(B). Because Cracker Barrel chose to replace the sign surfaces by removing the sign structure, there was no safe harbor for Cracker Barrel in these circumstances. As a result, the trial court correctly concluded that Cracker Barrel lost its nonconforming use status, and summary judgment was properly entered for Plainfield on this basis.

### B. Conflicting Ordinance Provisions

 Cracker Barrel also argues that summary judgment was improper because the trial court erred in finding that Article 9.1(E)(3) of the Ordinance controls the outcome here because that provision conflicts with the language of Article 7.8(B). In light of such a conflict, Cracker Barrel maintains that Plainfield should not prevail.

Notwithstanding Cracker Barrel's claim, we note that Article 1.8 quoted above provides that the provision imposing a greater or more restrictive standard of performance should control the outcome. Here, even assuming for argument's sake that Article 9.1(E)(3) and Article 7.8(B) conflict, Article 9.1(E)(3) governs here because it

9.1(I) of the Ordinance, it was not *permissible* maintenance by reason of the other control-

provides for *no* movement without a loss of the pre-existing, legally established, nonconforming use status, while Article 7.8(B) provides for *some* movement in order to perform maintenance. Because a provision that precludes any movement is more restrictive than one that provides for some limited movement, to the extent that a conflict does exist, Article 9.1(E)(3) controls. Thus, Cracker Barrel's claim also fails on this basis.

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.

ling provisions of the Ordinance.