Jerry M. WEIDA and Patti A. Weida,
Appellants–Defendants,

v.

CITY OF WEST LAFAYETTE,
Indiana, Appellee–
Plaintiff.

No. 79A04–0802–CV–90.

Court of Appeals of Indiana.

Dec. 2, 2008.

William P. Kealey, K. Campbell White, Stuart & Branigin LLP, Lafayette, IN, Attorneys for Appellants.

James R. Schrier, Kevin J. Riley, Reiling Teder & Schrier, LLC, Lafayette, IN, Attorneys for Appellee.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, Jerry M. Weida (Jerry) and Patti A. Weida (Patti) (collectively, the Weidas), appeal the trial court's Findings of Fact and Conclusions of Law entered following a bench trial in favor of Appellee–Plaintiff, City of West Lafayette, Indiana (the City), on the City's allegation that the Weidas' five-bedroom rental house was overoccupied during the 2005–06 Purdue school year.[1]

We affirm in part and reverse in part.

### ISSUES

The Weidas raise six issues on appeal, which we consolidate and restate as the following four issues:

(1) Whether the trial court erred by concluding that the Weidas permitted or allowed the overoccupancy of their rental house;

(2) Whether the trial court properly admitted the testimony of the City's witnesses, whose testimony was induced by the City's promise of post-trial consideration if they testified truthfully at trial;

(3) Whether the trial court erred by ruling on claims pending in other actions and other courts; and

(4) Whether the trial court's award of costs was contrary to law.

### FACTS AND PROCEDURAL HISTORY

At all times relevant to this lawsuit, the Weidas owned 112 Sylvia Street in West Lafayette, Indiana, and used the property as rental housing. They advertised the property online as a five-bedroom house renting for $300.00 per bedroom, for a total of $1,500.00 rent for the 2005–2006 lease term. Pursuant to the Weidas' rental certificate for the house and according to a sticker prominently placed next to the front door of 112 Sylvia Street, a maximum of three unrelated persons were allowed to occupy the residence.

On November 11, 2004, Melissa Wood (Wood) completed a rental application for the property, listing five people to occupy the property. Specifically, the rental application listed, besides Wood, Kelly Underwood (Underwood), Kelly Cichocki (Cichocki), Jill Schuler (Schuler), and her sister, Danielle Schuler (Danielle) as potential future tenants. The application shows that Cichocki's name is crossed out and a "No" is written next to it. (City's Exh. 34). That same day, the Weidas entered into a lease agreement for 112 Sylvia Street with Wood, Underwood, Schuler, and Danielle for a lease term of August 8, 2005 until August 7, 2006. The lease expressly incorporated the City's limitation of occupancy to three unrelated persons. In addition, the occupancy affidavit included the signatures of Wood, Underwood, Schuler, and Danielle, listing them as the occupants of the property. However, evidence at trial established that Danielle never signed the occupancy affidavit. The trial court noted in its findings that while someone else had signed Danielle's name on the affidavit, all likely persons deny doing so.

The record reflects that Schuler occupied the property from August 6, 2005 to November 26, 2005. Cichocki occupied the property from August 10, 2005 to November 26, 2005. Underwood occupied the property from August 12, 2005 to August 2006. Wood occupied the property from August 8, 2005 to May 5, 2006. Drazena

---

1. We held oral argument in this matter on October 8, 2008 at the Indiana Court of Appeals Courtroom. We thank counsel for their excellent advocacy.

Grce (Grce) occupied the property from August 18, 2005 to May 1, 2006. Kelly Krauss (Krauss) occupied the property from January 9, 2006 to May 5, 2006. Megan Retondo (Retondo) occupied the property from January 9, 2006 to April 9, 2006. These tenants are not related to one another by blood or marriage. Evidence reflects that Danielle never lived at 112 Sylvia Street.

In the fall of 2005, the names of Schuler, Danielle, Wood, Underwood, Cichocki, and Grce were posted under the lid on the mailbox of the residence and could be observed from the open lid of the mailbox. On October 27, 2005, Patti sent a notice of violation to 112 Sylvia Street, stating that the tenants were in violation of their lease due to overoccupancy. Patti conducted no follow up after the notice was sent and the Weidas did not require any of the occupants to vacate the property. Also, on several occasions during the fall semester employees or other agents of the Weidas performed maintenance at the residence on Sylvia Street.

In November of 2005, Schuler approached the Weidas requesting permission to sublease to Grce and to remove her name from the lease. Thereafter, on November 26, 2005, Schuler moved out of the property. Though she was not listed on the lease, on December 1, 2005, Grce paid $1,425.00 to the Weidas for December rent on the 112 Sylvia Street residence. In addition, that same day, Grce picked up a form at the Weida Apartments office to sublease the property, along with a rental application for the property. Beginning in January 2006, the Weidas received monthly rent payments for the residence in increments of $300.00, or one-fifth of the $1,500.00 total rent, including payments from individuals whose names were not on the property's lease or occupancy affidavit. In particular, the Weidas' payment ledger

reflects $300.00 checks from Krauss and Retondo for rent, as well as a $90.00 cash payment from Grce for late fees relating to the January 2006 rent payment.

On March 9, 2006, the Weidas received a request from the City for an updated occupancy affidavit for the property. When they received the request, the Weidas never inquired with the occupants of 112 Sylvia Street whether the occupancy affidavit signed by Wood, Underwood, and Schuler on November 11, 2004 was still accurate. They never required the tenants to complete an updated occupancy affidavit or conducted a personal investigation. That same day, the Weidas submitted the original occupancy affidavit, listing Wood, Underwood, Schuler, and Danielle as occupants of the property, to the City.

On March 23, 2006, City Inspector Curtis Cunningham (City Inspector Cunningham) noticed a vehicle parked illegally off the drive at the residence of 112 Sylvia Street. He stopped at the property to inquire. He observed five names on the open lid of the mailbox: Retondo, Krauss, Wood, Underwood, and Grce. Upon returning to the office, he confirmed that three of these names were not included on the occupancy affidavit submitted for 112 Sylvia Street.

On April 10, 2006, the City filed its Complaint, which was subsequently amended on July 28, 2006, against the Weidas, Wood, Underwood, Grce, Krauss, and Retondo. In its four-count Amended Complaint, the City first demanded injunctive relief against all defendants for permitting or allowing over occupation of the property located at 112 Sylvia Street in violation of Section 117.08(d) of the City Ordinance. In Count 2, the City sought fines against all defendants pursuant to Section 117.20(e) of the City Ordinance. Under Count 3 of its Amended Complaint, the City sought fines against the Weidas

for submitting an incorrect occupancy affidavit for the property in violation of Section 117.05 of the City Ordinance; and Count 4 demanded fines from the Weidas for submitting false information to the City pursuant to Section 117.20(b) of the City Ordinance. On May 18, 2006, the Weidas, as landlords, filed cross-claims against Wood and Underwood, as tenants, for damages under the lease. In turn, these tenants brought cross-claims against the Weidas.

Between November 2006 and February 2007, the City entered into settlement agreements with Wood, Underwood, Grce, Krauss, and Retondo. These settlement agreements provided that

> [the City] and [the tenant] agree that [the tenant] will continue to cooperate with [the City] in this litigation by responding to any discovery requests truthfully, providing truthful information when requested by [the City], complying with the Indiana Trial Rules, and appearing for and testifying truthfully at any trial of this matter. If [the tenant] does all these things listed previously, at the conclusion of this litigation [the City] agrees to enter into the Consent Decree and Judgment ... to settle this matter between [the City] and [the tenant].

(Appellants' Exh. NN–RR). On July 3, 2007, the Weidas objected to the trial court's jurisdiction to hear the City's claims against the tenants. On September 18, 2007, the trial court overruled the Weidas' objections.

On February 15, 2007, the City moved for summary judgment against the Weidas as to each Count of the Amended Complaint. By Order of August 23, 2007, the trial court granted in part and denied in part the City's Motion for Summary Judgment. Specifically, the trial court granted summary judgment in the City's favor with regard to Count 3 of the Amended Com-

plaint only. On October 1, 2007, in response to the Weidas' motion for reconsideration of the August 23, 2007 ruling, the trial court issued a clarifying interpretation of the City's ordinance, stating, in pertinent part:

> The Ordinance does not create a strict liability offense by placing the burden of proof on the landlord. Instead it employs the doctrine of res ipsa loquitor to require the landlord to explain how his inquiry was diligent. The Indiana Supreme Court has approved that doctrine in situations where, as here, an occurrence is circumstantial evidence of negligence and the defendant is better able to ascertain the facts.

(Appellants' App. p. 81).

On October 23–25, 2007, the trial court conducted a bench trial. On October 25, 2007, the trial court, by Amended Order, recorded the parties' consent that the adjudication of the cross-claims among the Weidas and Wood and Underwood be deferred "until after the final disposition of the claims between [the City] and the Defendants." (Appellants' Br. p. 3). On November 30, 2007, the City filed and the trial court entered the Consent Decree and Judgment against Retondo, Underwood, Wood, Grce, and Krauss. Also, that same day, the trial court entered a thirty-seven page "Findings of Fact, Conclusions of Law and Order for Judgment granting Injunctive Relief and Imposing Fines against [the Weidas]." (Appellants' App. p. 31). By its Order, the trial court entered judgment in favor of the City and against the Weidas on Counts 1, 2, and 4 of the Amended Complaint.

On December 12, 2007, the Weidas filed a Motion to Correct Error. On December 13, 2007, the City filed its Motion for Taxation of Costs. Following a hearing on both motions, the trial court granted the City's

motion but denied the Weidas' Motion to Correct Error.

The Weidas now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Permitting or Allowing Overoccupancy*

The Weidas main contention states that the trial court disregarded the plain meaning of Section 117.08(d) of the City Ordinance and improperly relieved the City of its burden to prove that the Weidas had the culpability or *mens rea* for a "permit or allow" violation under the Ordinance.

■ Here, the trial court entered findings of fact and conclusions of law. Thus, we apply a two-tiered standard of review considering whether the evidence supports the findings and whether the findings support the judgment. *Todd Heller, Inc. v. Indiana Dep't of Transp.*, 819 N.E.2d 140, 146 (Ind.Ct.App.2004), *reh'g denied, trans. denied*. The trial court's findings and conclusions will be set aside only if they are clearly erroneous, that is, if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* Also, we observe that the interpretation of a zoning ordinance is a question of law. *Cracker Barrel Old Country Store, Inc. v. Town of Plainfield ex rel. Plainfield Plan Comm'n*, 848 N.E.2d 285, 290 (Ind.Ct.App.2006), *trans. denied*. Appellate courts review questions of law under a *de novo* standard and owe no deference to a trial court's legal conclusions. *Payday Today, Inc. v. McCullough*, 841 N.E.2d 638, 642–43 (Ind. Ct.App.2006). Ordinary rules of statutory construction apply in interpreting the language of a zoning ordinance. *Cracker Barrel Old Country Store, Inc.*, 848

N.E.2d at 290. That is, an ordinance is to be interpreted as a whole, and we will give words their plain, ordinary, and usual meaning. *Id.* We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Todd Heller, Inc.*, 819 N.E.2d at 146.

■ The City enacted its Ordinance due to widespread problems with overoccupancy of rental housing, especially the single-family homes converted to rental housing. *See* City Ordinance Section 117.01. This overoccupancy adversely impacted the City's residential neighborhoods through overcrowding, excessive traffic, demand for too much parking and the diminution of the public welfare of the City's existing neighborhoods. *See id.* To combat these problems, the City instituted a maximum allowable occupancy of rental housing, in particular in single-family zoned neighborhoods. To that effect, the City adopted Section 117.08(d), which reads as follows:

> It shall be the continuing duty of the owner and manager to personally monitor the occupancy of each dwelling unit and to ensure that it is not occupied by more persons than the maximum allowable occupancy. It shall be a violation of this chapter by the owner and/or occupants to exceed the maximum allowable occupancy or to hold the dwelling unit out for occupancy by more than the maximum allowable occupancy or permit or allow the dwelling unit to be occupied by more persons than the maximum allowable occupancy.

In a nutshell, the Weidas now essentially assert that the pivotal duty under the Ordinance is not to permit or allow overoccupancy at 112 Sylvia Street, whereas the duty to monitor, as included in the Ordinance's first sentence, is merely a secondary obligation. Additionally, they allege that the "permit or allow" language in-

cludes a culpability element, *i.e.,* the Weidas argue that the City was required to prove that they *intended* to permit or allow the overoccupancy. As the City cannot prove that they affirmatively permitted the overoccupancy, the Weidas maintain that no investigation into the secondary duty needs to be made and the trial court's judgment should be reversed.

The City, on the other hand, asserts that the Weidas' proposed interpretation would make a violation of a duty to monitor without consequence. Instead, the City proposes an interpretation of the entire section—without parsing out the sentences one by one—whereby the landlord would be under a duty to monitor *and* to ensure proper occupation. As such, the City maintains that when a landlord fails this double duty, he 'permits or allows' overoccupancy.

In support of their respective arguments both parties rely on *Benjamin v. City of West Lafayette,* 701 N.E.2d 1268 (Ind.Ct. App.1998), *trans. denied.* In *Benjamin,* the City of West Lafayette sued Benjamin under the City's Ordinance for permitting overoccupancy in two rental properties.[2] *Id.* at 1270. The trial court found for the City and Benjamin appealed. *Id.* at 1271. On appeal, Benjamin asserted that the City had failed to show that he permitted any overoccupancy by the tenants. *Id.* at 1272. Reviewing the record, we noted that "Benjamin actively 'closed his eyes and ears,' inasmuch as the evidence showed that he was aware of impending occupancy

investigations and specifically told the tenants to make it appear as though only three people lived on the property." *Id.* at 1273. We observed that on one occasion a tenant told Benjamin that more than three unrelated people were going to reside at one of his rental properties. *Id.* Benjamin responded that he "did not want to know anything." *Id.* Based on these facts, we concluded that

> Although Benjamin, through a cursory inquiry, could have discerned whether any familial relationship existed between the residents at his properties, he did not. Such an inquiry would have enabled Benjamin to determine who were actual residents and who were simply guests of those residents. *Moreover, Benjamin's awareness and knowledge of the overoccupancy violation is amply established by the record.* As a result, we conclude that the evidence was sufficient to demonstrate that overoccupancy existed on the properties and that Benjamin violated the ordinance in that he permitted such overoccupancy.

*Id.* (emphasis added).

■■■■■ Focusing on the 'awareness and knowledge' language in the *Benjamin* decision, the Weidas argue that the ordinary interpretation of 'permit and allow' under the Ordinance must necessarily include an intentional element. Accordingly, the Weidas maintain that the City was not only required to prove that overoccupancy existed but also that they committed affirmative misconduct.[3] We disagree. The

---

**2.** We note that Benjamin was sued under the previous version of the City's Ordinance section 117.08(d).

**3.** Mindful of this interpretation, the Weidas continue their argument by asserting that the trial court committed reversible error by incorporating a *res ipsa loquitur* element in the 'permit and allow' provision of the Ordinance. The *res ipsa loquitur* doctrine literally

means "the thing speaks for itself." *Rector v. Oliver,* 809 N.E.2d 887, 889 (Ind.Ct.App. 2004), *trans. denied.* It is a *rule of evidence which permits an inference of negligence to be drawn* based upon the surrounding facts and circumstances of the injury. *Id.* (emphasis added). In determining if the doctrine is applicable, the question is whether the incident more probably resulted from defendant's negligence as opposed to another cause. *Id.*

appellate court's holding in *Benjamin* was not directly contingent upon the awareness and knowledge finding proponed by the Weidas. Instead, the court based its opinion on the sufficiency of the evidence before it, with one of the factors being Benjamin's awareness and knowledge.

▇ Here, the City clearly demonstrated that the Weidas exceeded the maximum allowable occupancy at the Weidas' rental property at 112 Sylvia Street. On March 23, 2006, City Inspector Cunningham observed five different names on the mailbox, whereas the occupancy allowance was limited to three non-related individuals. When he returned to the office, City Inspector Cunningham confirmed that three of these names were not included in the updated occupancy affidavit that the Weidas had submitted for the property. Based on this evidence, the City filed its Complaint.

The Weidas did not present any evidence from which we can infer that they satisfied their duty to personally monitor the occupancy of each dwelling unit, as specified in the City's Ordinance Section 117.08(d). Rather, the evidence suggests that the Weidas had been put on notice that more than three unrelated persons were occupying their rental property prior to the City filing its Complaint. In the fall of 2005, the names of Schuler, Danielle, Wood, Underwood, Cichocki, and Grce were listed on the mailbox and could be observed from the open lid of the mailbox. On October 27, 2005, Patti sent a notice of violation to 112 Sylvia Street, stating that the tenants were in violation of the occupancy limitations of their lease. However, the Weidas never conducted any follow-up on the notice.

Beginning in January 2006, the Weidas received monthly rent payments on increments of $300.00, or one-fifth of the $1,500.00 total rent obligation, including payments from Krauss, Grce, Retondo, and Cichocki who were not on the lease or occupancy affidavit. On March 9, 2006, the Weidas received a request from the City for an updated occupancy affidavit for the property. Rather than verifying the accuracy of the occupancy affidavit that was on file for the residence, the Weidas sent a copy of the affidavit originally executed on November 11, 2004.

Just as in *Benjamin*, where the totality of the evidence—including Benjamin's awareness and knowledge—amounted to the court's finding that he violated the overoccupancy statute, here, it is clear that the sum of all reasonable inferences provided sufficient notice to the Weidas that a situation of overoccupancy existed at 112 Sylvia Street. Nevertheless, instead of pursuing their monitoring duty to the fullest extent, they, in effect, ignored the evidence that was in front of them. As such, they permitted the overoccupancy to occur in the first place and then to continue at the residence.

▇ In light of the duty to monitor, the Weidas additionally take issue with the trial court's conclusion 14. In this conclusion, the trial court stated, in pertinent part, that

The [c]ourt finds that a diligent landlord in the position of the [Weidas] would make the inquiries and obtain the signatures required for a new occupancy affi-

The Weidas assert that because the 'permit and allow' provision of the Ordinance inherently includes an intentional element, it cannot be proven by relying on *res ipsa loquitur*, a negligence doctrine. However, the Weidas do not single out, nor did we find any, specif-ic findings or conclusions in the trial court's judgment to support the allegation that the trial court relied on the *res ipsa loquitur* doctrine to reach its decision that the Weidas permitted or allowed overoccupancy.

davit no less frequently than each semester for any dwelling containing four or more bedrooms or for which rent greater than $1185.00 is charged, and also upon the occurrence of any of the following events:

a. Four or more people apply to rent a dwelling, claiming that several are related to each other.

b. Rent is regularly received in cash.

c. Rent is regularly received in one lump sum.

d. Rent is regularly received in fractions of one-fourth or less.

e. Rent is received from or on behalf of non-lessees.

f. Four or more names appear on the mailbox.

g. Four or more cars are regularly parked on the premises.

h. A proposed tenant fails to sign the lease.

i. "Related" tenants request to move or to sublet.

j. The City requests an updated Occupancy Affidavit.

(Appellants' App. p. 56). The Weidas assert that the trial court's list of inquiries and actions would expose a landlord to constitutional and tort liabilities. Therefore, they claim that the trial court's mandate runs afoul of privacy rights and the Fourth Amendment. However, it should be pointed out that the trial court's suggested events that would require a landlord to request an updated occupancy affidavit all focus on the landlord, not the tenant, or point to easily visible signs. Under no circumstance is the trial court asking the landlord to enter the property. As such, we find that this list does not amount to an interference of a tenant's possessory interest or an intrusion upon the tenant's physical solitude or seclusion. *See, e.g., Johnson v. Scandia Associates,*

*Inc.,* 717 N.E.2d 24, 29 (Ind.1999) (When a landlord enters a lease agreement with her tenant, he voluntarily confers certain rights upon the tenant, such as possession and quiet enjoyment for a specific term).

In sum, based on the evidence before us, we conclude that the trial court properly determined that the Weidas permitted or allowed the overoccupancy of their rental house in violation of City Ordinance 117.08(d). However, we hasten to add that our decision today should not be interpreted as an approval of the City's Ordinance. Not only is the Ordinance poorly written, it is also, in places, highly ambiguous. We echo the sentiment expressed in *Bowden v. City of West Lafayette,* 79A05–0802–CV–66, 895 N.E.2d 139 (Ind.Ct.App. Oct. 17, 2008), slip op. 1 n. 1, that this discussion is better saved for another day when these issues are not beyond the scope of our review and are properly presented to this court. Nevertheless, the issues, as raised by the Weidas, compel us to affirm the trial court.

## II. Testimony by the City's Witnesses

 Next, the Weidas complain about the trial court's decision to hear testimony from the City's witnesses. The standard of review for admissibility of evidence is abuse of discretion. *Blocher v. DeBartolo Properties Mgmt., Inc.,* 760 N.E.2d 229, 233 (Ind.Ct.App.2001), *trans. denied.* The trial court abuses its discretion only when its action is clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.* Even when the trial court erred in its ruling on the admissibility of evidence, this court will reverse only if the error is inconsistent with substantial justice. *Id.*

Between November 2006 and February 2007, the City entered into settlement agreements with Wood, Underwood, Grce, Krauss, and Retondo. These settlement agreements provided that

[the City] and [the tenant] agree that [the tenant] will continue to cooperate with [the City] in this litigation by responding to any discovery requests truthfully, providing truthful information when requested by [the City], complying with the Indiana Trial Rules, and appearing for and testifying truthfully at any trial of this matter. If [the tenant] does all these things listed previously, at the conclusion of this litigation [the City] agrees to enter into the Consent Decree and Judgment . . . to settle this matter between [the City] and [the tenant].

(Appellants' Exh. NN–RR). Wood, Underwood, Grce, Krauss, and Retondo testified during the bench trial.

 The Weidas now allege that the trial court abused its discretion by admitting the witnesses' testimony. Specifically, they contend that a settlement agreement offering a reduction of fines contingent upon truthful testimony essentially amounts to payment to tell the truth. The Weidas assert that this inducement is improper under the Rules of Professional Conduct and current case law. However, it is unclear that the Weidas raised this argument in their objection to the trial court. The record before us only contains evidence that the Weidas objected at trial based on the trial court's subject matter jurisdiction.[4] As a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court. *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC*, 764 N.E.2d 647, 651 (Ind.

Ct.App.2002). This rule exists in part to protect the integrity of the trial court because it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. *See id.* Consequently, an argument or issue not presented to the trial court is generally waived for appellate review. *Id.*

### III. *Claims Pending in Other Actions and Other Courts*

 Next, the Weidas dispute the trial court's conclusion 35 which states: "an owner or manager violator is not entitled to contribution or reimbursement from occupant violators." (Appellants' App. p. 63). They argue that the trial court had no jurisdiction to rule on the Weidas' claims against their tenants pending in other courts. Apparently, the Weidas attempt to claim here that the trial court ruled upon the contractual indemnity obligations between the Weidas and the tenants. However, the Weidas do not provide any citations to the record or case law, nor do they explain what is meant by "claims pending in other courts or any unfiled claims." As such, we find that the Weidas waived their argument. *See* Ind. Appellate Rule 46(A)(8).

Nevertheless, it should be noted that the preamble of the trial court's Findings of Fact and Conclusions of Law clearly specifies that

[T]his cause also came on for bench trial at the same time regarding the Weida

---

4. In their appellate brief, the Weidas specify the ground of their objection as "that the City's claims against the Occupants were moot due to settlement." (Appellants' Br. p. 5) The Weidas further state that they objected at trial "that withholding the unfiled judgment confessions amounted to an improper attempt to influence the Occupants' trial testimony." (Appellants' Br. p. 5). This statement is not supported by citations to the

Appendix or the Record. *See* Ind. Appellate Rule 46(A)(8). In fact, review of the documents before us reveal that neither the Appendix nor the Record include the Weidas' reply brief which might contain their raised objection. (*See* CCS entry of 7/3/2007, Appellants' App. p. 16). The Appendix and record only include the trial court's "Order Overruling Weida Defendants' Objection to Subject Matter Jurisdiction." (Appellants' App. p. 75).

Defendants' Cross–Claims against Cross–Defendants [Wood] and [Underwood], and Counter–Cross–Claims from Wood and Underwood against the Weida Defendants. By agreement of all parties these Findings of Fact, Conclusions of Law, and Order deal only with the claims in the Amended Complaint and Counterclaim and do not address the Cross–Claims and Counter–Cross–Claims.

(Appellants' App. p. 31).

### IV. *Award of Costs*

█ In their final issue, the Weidas contend that the trial court erred in its award of transcription costs to the City pursuant to Indiana Trial Rule 54(D). Indiana Trial Rule 54(D) provides:

Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs in accordance with any provision of law; but costs against any governmental organization, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be computed and taxed by the clerk on one [1] day's notice. On motion served within five [5] days thereafter, the action of the clerk may be reviewed by the court.

The Weidas assert that "[t]he City's bill of costs included $4,637.85 in deposition transcription fees and $3,164.00 in trial transcription costs." (Appellants' Br. p. 25). Relying upon *Van Winkle v. Nash*, 761 N.E.2d 856 (Ind.Ct.App.2002), the Weidas claim that these transcription costs are ineligible for taxation.

In *Van Winkle*, we addressed the taxation of costs pursuant to Ind.Code § 34–52–1–1 [5] and Trial Rule 54(D) in response to Van Winkle's claim that the trial court erred in taxing costs for, among others, deposition transcription. *Id.* Analyzing earlier case law, we held that 'costs' pursuant to the General Recovery Statute are limited to filing and witness fees. *Id.* at 862. As such, we concluded that the trial court had erred in its award of deposition transcription fees. *Id.*

In turn, the City relies on I.C. § 34–52–3–1 to justify the trial court's award of deposition transcription fees and $3,164.00 in trial transcription costs. I.C. § 34–52–3–1 states that

When in any suit pending in any court in this state it is necessary to procure a transcript of any judgment or proceeding, or exemplification of any record, as evidence in the action, the necessary expense of procuring the transcript or exemplification shall be taxed with the other costs in the cause, and recovered as in other cases.

However, in *Van Winkle* we rejected a similar claim, stating that I.C. § 34–52–3–1 only pertains to costs recoverable on appeal, not costs incurred at the trial level. *Van Winkle*, 761 N.E.2d at 862 n. 6. Thus, we conclude that the trial court erred in awarding transcription costs to the City. Accordingly, we reverse the trial court's decision.

### CONCLUSION

Based on the foregoing, we hold that (1) the trial court properly concluded that the Weidas permitted or allowed the overoccupancy of their rental house; (2) the Weidas waived their argument regarding the admission of the City's witnesses at trial; (3) the trial court did not rule on claims pend-

---

5. Indiana Code section 34–52–1–1, the General Recovery Rule, states "(a) In all civil actions, the party recovering judgment shall re- cover costs, except in those cases in which a different provision is made by law."

ing in other actions and other courts; and (4) the trial court erred in its award of transcription costs.

Affirmed in part, reversed in part.

BAILEY, J., and BRADFORD, J., concur.