# FOR PUBLICATION



**FILED**

Dec 22 2014, 9:51 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JAMES ALEXANDER TANFORD**
Bloomington, Indiana

ATTORNEY FOR APPELLEE:

**PATRICIA M. MULVIHILL**
City of Bloomington
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

ALEXANDER GUL,                          )
                                        )
    Appellant-Plaintiff,            )
                                        )
       vs.                       )    No.  53A04-1408-MI-378
                                        )
CITY OF BLOOMINGTON,                    )
                                        )
    Appellee-Defendant.             )

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Valeri Haughton, Judge
Cause No. 53C08-1308-MI-1428

**December 22, 2014**

**OPINION – FOR PUBLICATION**

**BAKER, Judge**

"Her lawn
Looks like a meadow,
And if she mows the place
She leaves the clover standing
And the Queen Anne's Lace!"[1]

"The grass may be greener on the other side of the fence but you still have to mow it."[2]

Alexander Gul believes that modern day lawn maintenance practices are harmful to the environment. As a result, he refuses to mow his lawn to comply with an ordinance requiring that the height of grass in one's yard may not exceed eight inches. He appeals the trial court's order granting summary judgment in favor of the City of Bloomington (Bloomington) on Gul's complaint against Bloomington appealing an administrative conclusion that Gul had violated the grass height ordinance.

Gul argues that the ordinance at issue (1) violates his freedom of conscience under the Indiana Constitution; (2) violates his freedom of expression under the United States and Indiana Constitutions; (3) is facially invalid because it conflicts with two Indiana Code provisions; and (4) is void for vagueness under the federal Due Process clause. After cutting through Gul's arguments, we affirm.

---

[1] Edna St. Vincent Millay, "Portrait by a Neighbor."

[2] Anonymous Proverb.

Gul owns and occupies residential property in Bloomington. On multiple occasions throughout the years, Bloomington has cited Gul for violations of Bloomington Municipal Code section 6.06.050 (the Ordinance), which prohibits a landowner from allowing the property to become overgrown with grass that is over eight inches tall.

Gul allows his yard to grow naturally and does not apply chemicals, mow, water, or fertilize it. He explains that his decision to maintain a natural yard is a statement of his sincerely held environmental belief that the overuse of chemicals, water, and lawnmowers to maintain a traditional lawn is harmful to the environment.

Bloomington officials disagree and view Gul's yard as merely overgrown. Over the course of twelve years, Gul has been cited for violations of the Ordinance thirty-eight times. He has been assessed fines totaling $1720 and abatement costs of $1100.

On July 11, 2013, the Bloomington Department of Housing and Neighborhood Development (HAND) issued Gul a citation for having tall grass and assessed a fine of $50. Gul appealed the citation to the Bloomington Board of Public Works, and the Board affirmed the citation and fine on July 30, 2013.

On August 7, 2013, Gul appealed the Board's decision to the trial court. On November 20, 2013, the parties submitted to the trial court joint stipulations of facts, law,

---

[3] The Appellant has not provided this Court with a full and complete Appendix. All Exhibits provided to the trial court were not included, and only select and sporadic portions of a transcript relied upon by the trial court were included. We caution counsel for appellant to be mindful in the future to include all "pleadings and other documents . . . that are necessary for resolution of the issues raised on appeal[.]" Ind. Appellate Rule 50(A)(2)(f).

and exhibits. Based on those documents, Gul filed a motion for judgment on the stipulated record on December 12, 2013, and Bloomington filed a motion for summary judgment on January 16, 2014. The trial court denied Gul's motion and granted Bloomington's motion on January 23, 2014, finding that the Ordinance does not violate the United States or Indiana Constitutions and that it is not facially invalid. Gul now appeals.

## DISCUSSION AND DECISION

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Pedraza v. City of E. Chicago, 746 N.E.2d 94, 99 (Ind. Ct. App. 2001). On appeal, the trial court's order granting or denying a summary judgment motion is cloaked with the presumption of validity. Id. The appellant has the burden of persuading this Court that the decision to grant summary judgment was erroneous. Id. On appellate review, all properly asserted facts and reasonable inferences that may be drawn therefrom should be resolved against the movant. Id. We will sustain the trial court's decision if it is sustainable by any theory or basis found in the record. Id.

In this case, Gul argues that the Ordinance is unconstitutional. We apply a de novo standard of review to determine the constitutionality of a statute or ordinance. Paul Stieler Enters., Inc. v. City of Evansville, 2 N.E.3d 1269, 1272 (Ind. 2014).

4

## I. Freedom of Conscience

Article 1, Section 3 of the Indiana Constitution provides as follows: "[n]o law shall, in any case whatever, control the free exercise and enjoyment of religious opinions, or interfere with the rights of conscience." Gul argues that the Ordinance is unconstitutional because it interferes with his rights of conscience as enshrined in this Constitutional provision.

There is a dearth of caselaw interpreting or applying the conscience clause of Article 1, Section 3, in a non-religious context. Bloomington argues that the conscience clause is merely an extension of the Constitution's protection of religious belief. In other words, "[t]he right of conscience enshrined in § 3 does not give absolute protection to all beliefs, rather it gives broader protection to the religious beliefs protected in Art. I §§ 2-8 of the Indiana Constitution." Appellee's Br. p. 5.

The Bill of Rights in the Indiana Constitution is contained in Article 1, and Sections 2 through 8 focus on religion-related freedoms. It has been the case in Indiana since the 19th century that "the law allows everyone to believe as he pleases" when it comes to religion—including the right to hold no religious beliefs whatsoever:

> These provisions of the fundamental law not only take away all power of the state to interfere with religious belief, but they leave the citizen perfectly free to repudiate the faith and belief he once professed and adhered to, and adopt a new creed and faith, differing from that of the church to which he belonged; or he may repudiate his old belief and faith without adopting any new one; and these changes he may adopt as often as to him may seem proper, and the law will protect him in it.

5

Smith v. Pedigo, 145 Ind. 361, 33 N.E. 777, 779 (Ind. 1893).

The conscience clause must be interpreted in this context. Judge Rovner of the Seventh Circuit Court of Appeals has explained the history of the notion of freedom of conscience as follows:

> . . . "freedom of religion" and "freedom of conscience" were terms that were used interchangeably in discussions of religious liberty [at the time of the drafting, debate, and adoption of the First Amendment's free exercise clause]. . . . [T]he exercise of religious conscience was understood to be a matter between the individual and his God—not, perhaps, in the more modern sense of believing whatever one wants, but rather as a reflection that the individual owed his or her obedience on moral matters directly to God. The understanding that the exercise of religions was a matter of the individual's relationship with and obedience to God was also consistent with the multiplicity of minority religions practiced in the United States by the second half of the 18th century, and a consensus that the country should move away from a Colonial history of officially established religions (and officially disfavored religions) toward religious pluralism.

Korte v. Sebelius, 735 F.3d 654, 700-01 (7th Cir. 2013) (Rovner, J., dissenting) (internal citations omitted). While this analysis applies to the First Amendment to the United States Constitution rather than to the Indiana Constitution, its exploration of the meaning of "conscience" in centuries past is certainly relevant, as is the greater context of the surrounding Sections that are all devoted to religious liberties.

At most, the rights of conscience referred to in Article 1, Section 3 extend only to the right to hold whatever beliefs one desires. In other words, the government may not punish citizens solely for the opinions that we hold. We cannot conclude, however, that the drafters of the Indiana Constitution intended to enshrine a right to believe whatever

6

one desires <u>and also</u> to exercise those beliefs with no regard for the law. For example, one is free to hold a sincere belief that cigarette smokers should be able to smoke anywhere they would like to do so. But one is not free to smoke in, for example, buses, restaurants, libraries, or hospitals, as doing so would violate Bloomington Municipal Code 6.12.030. One is free to believe that rabies vaccinations are harmful to dogs and cats. But one is not free to refrain from vaccinating one's pets, as that would violate Bloomington Municipal Code 7.44.010.

To rule as Gul asks us to would be tantamount to declaring nearly every statute and ordinance on the books in Indiana unconstitutional, as it is possible to find someone, somewhere, with a sincere belief that contravenes every law. We cannot, and do not, believe that Article 1, Section 3 countenances that result. Furthermore, we agree with the trial court that

> [i]f rights of conscience were meant to be given the right to practice, they would have been included in Section 2. Section 3 . . . protects only the right to opinion. The 'free exercise and enjoyment' protected in Section 3 protects against unequal treatment under law for holding an opinion for reasons of conscience, but it does not grant a right to the practice of those opinions.

Appellant's App. p. 14.

In sum, we find that Article 1, Section 3 was intended to apply to religious, rather than non-religious, matters of conscience. But even if it includes non-religious matters of conscience, it protects only the right to hold one's own opinions, and does not protect the right to act on one's own opinions in contravention of the law. Here, Gul's belief

regarding the environmental harm of modern day lawn care is undisputedly sincerely held. But it is not a religious belief. And even though he has the right to hold this belief, Section 3 does not protect him from legal consequences if he violates local ordinances in the name of this belief. We find that the Ordinance does not violate Article 1, Section 3 of the Indiana Constitution.

## II.  Freedom of Expression

### A.  First Amendment to the U.S. Constitution

Next, Gul argues that the Ordinance violates his freedom of expression under the First Amendment to the United States Constitution. For the First Amendment to be implicated, we must first determine whether Gul's actions herein constitute protected expressive conduct. See Rumsfeld v. Forum for Academic & Institutional Rights, Inc., 547 U.S. 47, 66 (2006). To determine whether the First Amendment applies to a particular situation, we must determine first, whether there is an intent to convey a particularized message, and second, whether there is a great likelihood that the message will be understood by those who view it. Texas v. Johnson, 491 U.S. 397, 404 (1989). The United States Supreme Court has held that "[t]he fact that . . . explanatory speech is necessary is strong evidence that the conduct at issue . . . is not so inherently expressive that it warrants protection under [the First Amendment]." Rumsfeld, 547 U.S. at 66 (applying United States v. O'Brien, 391 U.S. 367 (1968)).

In this case, it is undisputed that by refraining from mowing his lawn, Gul intended to convey a particularized message. Therefore, we move to the second prong of

the test, and must determine whether there is a great likelihood that Gul's message was understood by those who viewed it. Gul stipulated that no one was aware of his reasons for refraining from mowing until he explained it:

13. The City of Bloomington was not aware of Alexander Gul's reasons for not keeping his grass at a height below eight inches until he verbalized those reasons.

14. Individuals owning property in the same neighborhood as Alexander Gul's property . . . were not aware of Alexander Gul's reasons for not keeping his grass at a height below eight inches until he verbalized those reasons.

Appellant's App. p. 27. It is undisputed, therefore, that Gul's message was <u>not</u> understood by those who viewed it.

There is nothing inherent to an overgrown yard that would lead an average person of ordinary sensibilities to conclude that any message at all was being conveyed, much less a specific environmental message. Until Gul explained the reasons for his actions, the community was mystified. Under these circumstances, we do not find that Gul's decision to refrain from mowing his yard constitutes expression that is protected by the First Amendment to the United States Constitution.

## B. Indiana Constitution

Gul also contends that the Ordinance violates Article 1, Section 9 of the Indiana Constitution, which provides as follows: "No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible."

9

When reviewing whether the State has violated Article 1, Section 9, we employ a two-step analysis. Blackman v. State, 868 N.E.2d 579, 584-85 (Ind. Ct. App. 2007). First, we must determine whether state action has restricted a claimant's expressive activity. Id. at 585. Second, if it has, we must decide whether the restricted activity constituted an "abuse" of the right to speak. Id. We will assume for argument's sake that Gul's actions herein constitute expressive activity that was restricted by state action. See Ogden v. Robertson, 962 N.e.2d 134, 141 (Ind. Ct. App. 2012) (holding that "the Indiana Constitution more jealously protects freedom of speech guarantees than does the United States Constitution"), trans. denied.

Turning to the second prong, Gul must prove that "the State could not reasonably conclude that the restricted expression was an 'abuse.'" Whittington v. State, 669 N.E.2d 1363, 1369 (Ind. 1996). Generally, when we review the State's determination that a claimant's expression was an abuse of the right of free speech, we need only find that the determination was rational. Blackman, 868 N.E.2d at 585. If, however, the expressive activity was political in nature,[4] the State must demonstrate that it did not materially burden the claimant's opportunity to engage in political expression. Id. This Court has explained that "[e]xpressive activity is political if its aim is to comment on government

_____

[4] Gul contends that the heightened scrutiny applies to expression that is non-political in nature such as activity that addresses a matter of public concern, comments on or criticizes official conduct or policies, or proposing new political ideas. He cites to Ogden v. Robertson, 962 N.E.2d 134 (Ind. Ct. App. 2012), in support of this proposition. To the contrary, however, the Ogden Court focused solely on whether the speech at issue was political, focusing primarily on whether "the purpose of his expression was . . . political." Id. at 142 (emphasis original). Finding that because his purpose was not political, the Court concluded that there was no violation of Article 1, Section 9. Nothing in Ogden leads us to conclude that the application of heightened scrutiny applies beyond political speech.

10

action, including criticism of an official acting under color of law." Id. Gul bears the burden of proving that his expression was political, and we find that he has not met that burden. There is no evidence in the record that Gul's intent was to comment on government action; instead, the evidence establishes that his intent was to comment on the actions of the citizens in his community and the way in which they maintain their lawns.

We must determine, therefore, whether Bloomington's determination that Gul had abused his right to expression was rational. There is evidence in the record that Gul's failure to maintain his lawn in accordance with the Ordinance was harmful to the public welfare. Specifically, a realtor stated that the values of properties in Gul's neighborhood have dropped as a result of the condition of his yard and that it has been difficult to sell properties in that area for that reason. Appellant's App. p. 35-36; see also Field v. Area Plan Comm'n of Grant Cnty., 421 N.E.2d 1132, 1139 n.6 (Ind. Ct. App. 1981) (holding that a person's deleterious effect on his neighbors' abilities to enjoy their own properties and on the value and marketability of his neighbors' properties is considered harmful). Moreover, it was rational for Bloomington to conclude that Gul's actions "provide[d] an attractive nuisance . . . , lure[d] uninvited scavengers, provide[d] cover and breeding grounds for rodents and insects, and generally constitute[d] a threat to the health, safety and welfare of neighborhood residents." Id. Under these circumstances, we find that Bloomington's determination that Gul had abused his right to expression was rational, and we do not find a violation of Article 1, Section 9 of the Indiana Constitution.

## III. Facial Validity of the Ordinance

### A. Interplay with Indiana Code

Gul next contends that the Ordinance and other, related ordinances are void because they conflict with two provisions in the Indiana Code. The Ordinance provides as follows:

> It is unlawful for the owner of any lot or tract of ground within the city to allow it to become overgrown with weeds, grass, or noxious plants beyond the height of eight inches or to such extent that the growth is detrimental to the public health and constitutes a nuisance.

Bloomington Mun. Code § 6.06.050. Gul directs our attention to Indiana Code section 36-7-10.1-3, which provides, in pertinent part, as follows:

> (a) The legislative body of a municipality or county may by ordinance require the owners of real property located within the municipality or the unincorporated area of the county to cut and remove weeds and other rank vegetation growing on the property. . . .
>
> (b) An ordinance adopted under subsection (a) must specify the following:
>
> ***
>
> (2)     The definitions of weeds and rank vegetation.

Gul argues that because the Ordinance does not define "rank vegetation," it runs afoul of the Indiana Code and must be found void on its face. We cannot agree.

As noted by the trial court, the Ordinance does not use the term "rank vegetation." Consequently, it would be nonsensical to require Bloomington to provide a definition of that term. Gul argues that

12

> if tall grass is not a type of rank vegetation, then the city is not authorized to regulate it in the first place because section 36-7-10.1-3 only authorizes cities to regulate "weeds and other rank vegetation." If tall grass is a type of rank vegetation then the city may regulate it but must define it. Either way the ordinance is invalid.

Appellant's Br. p. 26 n.15. Gul is correct that the statutory provision set forth above authorizes municipalities to regulate weeds and other rank vegetation. But the statute does not <u>limit</u> municipalities from regulating other types of growth as well. Indiana Code section 36-1-4-11 provides that as a general matter, "[a] unit may adopt, codify, and enforce ordinances." Bloomington's decision to regulate grass in addition to weeds does not conflict with Indiana Code section 36-7-10.1-3, it complements it, and it was within its authority to adopt and codify ordinances. <u>See</u> Ind. Code § 36-8-2-4 (providing that a municipal unit "may regulate conduct, or use or possession of property, that might endanger the public health, safety, or welfare"). Consequently, we find that the Ordinance does not violate Indiana Code section 36-7-10.1-3.

Next, Gul directs our attention to other ordinances in the Bloomington Municipal Code that provide that enforcement of violations of the Ordinance takes place initially in an administrative proceeding before the Bloomington Board of Public Works. Bloomington Mun. Code §§ 6.06.070, 6.06.080. Indiana Code section 36-1-6-9(c) provides, in relevant part, that "[a]n ordinance may not be designated . . . for enforcement through an administrative proceeding unless the ordinance restricts or prohibits actions harmful to the land . . . ." Gul argues that because the act of growing tall grass is not

13

harmful to the land, Bloomington may not designate violations of the Ordinance for enforcement through an administrative proceeding.

The only case interpreting Indiana Code section 36-1-6-9 is BBL, Inc. v. City of Angola, 2014 WL 26093 (N.D. Ind. 2014). In BBL, the district court considered whether an ordinance setting forth an administrative enforcement proceeding for the denial of sexually oriented business licenses violated Indiana Code section 36-1-6-9. The court acknowledged that the operation of such a business is not harmful to the land, but ultimately found that the ordinance did not run afoul of Indiana Code section 36-1-6-9:

> if the party seeking the license doesn't request a hearing, the Building Commissioner's written notice of intent to deny, suspend, or revoke a license becomes a final decision on the thirtieth day after it is issued; that decision is subject to judicial review. The party challenging the Building Commissioner's decision, therefore, isn't compelled to take part in an administrative proceeding before seeking judicial review. The party can simply forgo the hearing and wait thirty days for the decision to become final. Consequently, the licensing and regulatory ordinance doesn't violate Indiana Code § 36–1–6–9.

Id. at *9.

In the instant case, as in BBL, participation in the administrative proceeding is not mandatory. As explained by the trial court:

> Under the framework for enforcement provided in BMC 6.06.070, after an NOV [Notice of Violation] is issued, the property owner has seven days to file a written appeal with the board of public works. After seven days, liability for the fine attaches. Since fines imposed under BMC 6.06.050 can be appealed to the Monroe County Circuit Court, all a property owner needs to do to bypass the administrative proceeding is wait seven days after receiving the NOV, at which

14

point liability for the fine attaches and the property owner may contest the fine in the Monroe County Circuit Court.

Appellant's App. p. 10. In other words, the relevant ordinances do not mandate use of the administrative proceeding. Consequently, there is no violation of Indiana Code section 36-1-6-9.

### B. Due Process

Finally, Gul argues that the Ordinance is void under the Due Process Clause because it fails to define "grass" and, as a result, is unconstitutionally vague. A panel of this Court has previously explained the way in which we review vagueness challenges to municipal ordinances:

> When reviewing a constitutional challenge to a municipal ordinance, we treat the ordinance as if it stands on the same footing as an act of the legislature. Thus, a municipal ordinance is presumed to be constitutional, and we place the burden upon the party challenging the ordinance to show unconstitutionality. An ordinance is unconstitutionally vague only if individuals of ordinary intelligence cannot adequately comprehend the ordinance so as to inform them of the prohibited conduct. An ordinance need not list with exactitude each item of prohibited conduct; rather, an ordinance need only inform an individual of the generally prohibited conduct.

Lutz v. City of Indianapolis, 820 N.E.2d 766, 768 (Ind. Ct. App. 2005) (internal citations omitted) (emphasis added). When a word in an ordinance is undefined, it is given its plain, common, and ordinary meaning. Cracker Barrel Old Country Store v. Town of Plainfield, 848 N.E.2d 285, 290 (Ind. Ct. App. 2006).

Gul points out that there are 10,000 species of grass, including ornamental grasses, turf grasses, native grasses, and plants such as corn and sunflowers. Some of these

15

grasses do not require mowing, whereas others do. Gul contends that because the Ordinance does not define "grass" to explain to citizens which types must be mowed, it is unconstitutionally vague.

We cannot agree. Bloomington's reliance on the common and ordinary meaning of the word "grass" does not render the Ordinance void for vagueness. We find that the term "grass" has a sufficiently precise and commonly understood meaning for a person of ordinary intelligence to reasonably understand it. The Ordinance specifies a definite and specific height restriction, and we find that a person of ordinary intelligence would understand that turf grass in their yard cannot be allowed to grow over eight inches high. See Grayned v. City of Rockford, 408 U.S. 104, 110 (1972) (holding that an anti-noise ordinance was "marked by flexibility" but that it was "clear" what the "ordinance as a whole prohibits"). The "vast majority" of Bloomington's population understands how to maintain their lawns to avoid violating the Ordinance—indeed, it appears to be only Mr. Gul who claims the Ordinance is too vague to understand. Appellant's App. p. 11. We find that the Ordinance is not void for vagueness under the Due Process Clause.

The judgment of the trial court is affirmed.

MAY, J., and BARNES, J., concur.