

FILED

Nov 30 2015, 7:00 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS

Gregory F. Zoeller
Attorney General of Indiana

Frances H. Barrow
Aaron T. Craft
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR APPELLEES

Marce Gonzalez, Jr.
Dyer, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kent W. Abernathy,
Commissioner of the Indiana
Bureau of Motor Vehicles and
Bernard Carter, Prosecuting
Attorney for Lake County,

*Appellants-Respondents,*

v.

Eric C. Gulden, Jeremy
Crawford, David J. Klahn, John
P. Martin, and James M.
Panozzo,

*Appellees-Petitioners.*

November 30, 2015

Court of Appeals Case No.
45A03-1503-MI-73

Appeal from the Lake Superior
Court

The Honorable Julie N. Cantrell,
Judge

Cause Nos. 45D09-1407-MI-62,
45D09-1409-MI-90, 45D09-1407-
MI-61, 45D09-1406-MI-55, &
45D09-1406-MI-57

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Respondents, Kent W. Abernathy, Commissioner of the Indiana Bureau of Motor Vehicles, and Bernard Carter, Prosecuting Attorney for Lake County (collectively, BMV), appeal from the consolidated trial court's denials of the BMV's motions to correct error, and in one case, the BMV's motion for relief from judgment, in which the trial court upheld its grant of the five Appellees-Petitioners', Eric C. Gulden (Gulden), Jeremy Crawford (Crawford), David J. Klahn (Klahn), John P. Martin (Martin), and James M. Panozzo (Panozzo) (collectively, Appellees), petitions for judicial review of the BMV's determinations that each of them qualified as an habitual traffic violator (HTV).

We reverse.

## ISSUE

The BMV raises one issue on appeal, which we restate as: Whether Indiana Code section 9-30-10-4(e), which requires the BMV to use the dates of the offenses rather than the dates of the judgments in determining a person's status as an HTV, violates the *ex post facto* clauses of the Indiana and United States Constitutions, as applied to Appellees who committed their third HTV-qualifying offense prior to the effective date of subsection 4(e) but whose third judgment was entered after that provision became effective.

## FACTS AND PROCEDURAL HISTORY

[4] On October 4, 2003, Gulden committed the offense of reckless driving, for which judgment was entered on November 17, 2003. He committed the offense of operating while intoxicated on January 31, 2004, and judgment was entered against him on March 28, 2005. Thereafter, on July 29, 2007, he committed the offense of operating while intoxicated endangering a person, with judgment entered on April 21, 2014. On May 1, 2014, the BMV notified Gulden that he had accumulated three qualifying judgments within a ten-year period and as a result, Gulden was deemed an HTV and his driver's license was suspended for ten years. On July 16, 2014, Gulden filed a petition for judicial review of his HTV determination.

[5] Crawford committed the offense of operating while intoxicated on October 27, 2003, November 30, 2003, and January 5, 2008. Judgment on these offenses was entered on December 22, 2003, September 12, 2005, and September 3, 2014, respectively. On September 9, 2014, five days after the last qualifying judgment, the BMV notified Crawford of his HTV status and his ten-year license suspension. On September 24, 2014, Crawford filed a petition for judicial review of his HTV determination.

[6] On August 24, 2002, Klahn committed the offense of operating while intoxicated and judgment was entered on November 27, 2002. He committed the offense of operating while intoxicated endangering a person on December 30, 2007, with judgment entered on July 3, 2008. Thereafter, on August 22, 2011, Klahn committed the offense of prior operating while intoxicated within five years, and the trial court entered judgment on October 4, 2013. The BMV

informed Klahn of his HTV status and ten-year license suspension by notice dated October 19, 2013. On July 16, 2014, Klahn filed a petition for judicial review of his HTV determination.

[7] Martin committed the offense of driving while intoxicated on January 4, 2004, with judgement entered thereon on February 23, 2004. On February 19, 2008, he committed the offense of operating while intoxicated endangering a person, and the trial court entered judgment on April 14, 2014. On November 14, 2008, Martin committed the offense of prior operating while intoxicated within five years, and judgment was also entered on April 14, 2014. On May 14, 2014, the BMV notified Martin of his HTV status and his resulting ten-year license suspension. On June 26, 2014, Martin filed a petition for judicial review of his HTV determination.

[8] On February 7, 2004, Panozzo committed the offense of reckless driving, and judgment was entered on March 15, 2004. He committed the offense of operating while intoxicated on April 21, 2007, and judgment was entered against him on October 19, 2007. On December 23, 2011, he committed the offense of operating while intoxicated endangering a person, with judgment entered on April 28, 2014. On May 14, 2014, the BMV notified him of his HTV status and his ten-year license suspension. On June 2, 2014, Panozzo requested administrative review of the HTV determination, after which the BMV upheld its decision on June 25, 2014. The following day, Panozzo filed a petition for judicial review with the trial court.

[9] The trial court granted Appellees' separate petitions for judicial review based on its interpretation of Indiana Code section 9-30-10-4, which defines an HTV.[1] The trial court noted—without any references to case law—that this statute previously required reliance on the conviction dates to determine whether the three qualifying offenses fell within the ten-year time period for the HTV determination. On July 1, 2012, a new subsection 4(e) of the statute took effect which provided that the date of the commission of the offense, rather than the judgment date, is determinative to calculate the ten-year time limitation. Although the time between each Appellee's first and third qualifying conviction exceeded ten years, at least one of each Appellee's judgments was entered after the amendment took effect. Thus, when the HTV status was triggered by the third judgment, the BMV used the dates of the offense rather than the judgment dates to determine each Appellee's HTV status. The trial court concluded that this retroactive application of subsection 4(e) to each Appellee violated the *ex post facto* clauses of the United States and Indiana Constitutions. The BMV filed a motion to correct error in the cause of Gulden, Klahn, Martin, and Panozzo, and a motion for relief from judgment in Crawford's cause. In each cause, the BMV argued that because the purpose of the HTV statute was public safety and health rather than punishment, the *ex post facto* clause was not applicable. The trial court denied the BMV's motion in each cause.

---

[1] Although the order granting Crawford's petition for judicial review did not provide the trial court's reasons, Crawford's petition raised the same *ex post facto* argument as the other Appellees. As such, we assume that Crawford's petition was granted on the same grounds.

The BMV now appeals these five judgments, which we consolidated on appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

We review the denial of a request for a new trial presented by a Trial Rule 59 motion to correct error or—with respect to Crawford—a Trial Rule 60(B) motion for relief from judgment for abuse of discretion. *Speedway SuperAmerica, LLC. Holmes*, 885 N.E.2d 1265, 1270 (Ind. 2008), *reh'g denied*. We will reverse only where the trial court's judgment is clearly against the logic and effect of the facts and circumstances before it, or where the trial court errs on a matter of law. *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013).

However, when reviewing a challenge to the constitutionality of a statute, we apply a *de novo* standard of review. *Gul v. City of Bloomington*, 22 N.E.3d 853, 857 (Ind. Ct. App. 2014), *trans. denied*. As such, every statute stands before us clothed with the presumption of constitutionality until clearly overcome by a contrary showing. *In re Adoption of K.G.B.*, 18 N.E.3d 292, 299 (Ind. Ct. App. 2014) (citing *State Bd. of Tax Comm'rs v. Town of St. John*, 702 N.E.2d 1034, 1037 (Ind. 1998)). The party challenging the constitutionality of the statute bears the burden of proof and all doubts are resolved against that party. *Id.* If two reasonable interpretations of a statute are available, one of which is constitutional and the other not, we will choose that path which permits upholding the statute because we will not presume that the legislature violated

the constitution unless the ambiguous language of the statute requires that conclusion. *Id.* In addition, where, as here, the issue focuses on the constitutionality of a statute as applied to Appellees, the reviewing court can only "declare the challenged statute or regulation unconstitutional on the facts of the particular case." *Id.* (citing *Hazelwood v. State*, 3 N.E.3d 39, 40 (Ind. Ct. App. 2015), *reh'g denied*).

## II. *Applicability of Ind. Code § 9-30-10-4*

Section 4 of the Habitual Violator of Traffic Laws Chapter provides, in pertinent part,

> (b) A person who has accumulated at least three (3) judgments within a ten (10) year period for any of the following violations, singularly or in combination, and not arising out of the same incident, is a habitual violator:
>
> > (1) Operation of a vehicle while intoxicated.
> >
> > * * *
> >
> > (5) Reckless driving.
>
> * * *
>
> (e) For purposes of this section, the offense date is used when determining the number of judgments accumulated within a ten (10) year period.

I.C. § 9-30-10-4. Even though the HTV statute has been amended several times in recent years, only the 2012 amendment, which became effective on July 1, 2012 and which added subsection 4(e), is directly at issue here. *See* Pub. L. No. 125-2012, § 349, 2012 Ind. Acts 2169, 2342-44.

[13]     Pursuant to the language of the statute, the HTV determination is triggered by the accumulation of a third judgment for a qualifying violation within ten years. See I.C. § 9-30-10-4(b). Appellees do not appear to dispute that under the plain terms of the statute, they each qualify as an HTV by application of subsection 4(e). Gulden committed qualifying offenses on October 4, 2003, January 31, 2004, and July 29, 2007. With each violation, a judgment was entered on November 17, 2003, on March 28, 2005, and April 21, 2014 respectively. Crawford committed qualifying offenses on October 27, 2003, November 30, 2003, and January 5, 2008. Corresponding judgments were entered on December 22, 2003, September 12, 2005, and September 3, 2014. Klahn committed the offenses on August 24, 2002, December 30, 2007, and August 22, 2011. Judgment on those qualifying offenses was entered on November 27, 2002, July 3, 2008, and October 4, 2013, respectively. Martin's offenses were committed on January 4, 2004, February 19, 2008, and November 14, 2008, with one judgment entered on February 23, 2004, and two judgments entered on April 14, 2014. Lastly, Panozzo committed qualifying offenses on February 7, 2004, April 21, 2007, and December 23, 2011. Judgments were entered on March 14, 2004, October 19, 2007, and April 28, 2014.

[14]     Although the time between each Appellee's first and third HTV qualifying judgment exceeded ten years, at least one of each Appellee's three judgments was entered after July 1, 2012, when subsection 4(e) became effective. Accordingly, the BMV used the Appellee's offense dates to calculate each Appellee's HTV status. Classifying each Appellee as an HTV, the BMV was

required to suspend their driving privileges for ten years. *See* I.C. § 9-30-10-5(b) ("the bureau *shall* suspend the person's driving privileges").

[15] Nevertheless, the trial court concluded that subsection 4(e) rendered the statute unconstitutional *ex post facto* as applied to Appellees under both the United States and the Indiana Constitutions. The trial court reasoned that but for the amendment, which was enacted after each Appellee committed his third HTV qualifying offense, the Appellees would not have been deemed habitual traffic violators because each Appellee's third judgment occurred more than 10 years after his first. It is only when the commission date of the offense is used, each Appellee falls within the ten-year HTV time period. The BMV now disputes the trial court's application of the *ex post facto* clause

### III. *Ex Post Facto Clause*

[16] Both the U.S. Constitution and our state Constitution contain prohibitions against *ex post facto* laws. Article 1, Section 10 of the United States Constitution states that "[n]o State shall . . . pass any . . . ex post facto Law." The Indiana Constitution provides that "[n]o ex post facto law . . . shall ever be passed." IND. CONST. art. I, § 24. Among other things "[t]he ex post facto prohibition forbids Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 71 U.S. (4 Wall.) 277, 325-36, 18 L.Ed. 356 (1867)) (footnote omitted). The

underlying purpose of the *ex post facto* clause is to give effect to the fundamental principle that persons have a right to a fair warning of that conduct which will give rise to criminal penalties. *Armstrong v. State*, 848 N.E.2d 1088, 1093 (Ind. 2006) *cert denied* 549 U.S. 996 (2006). Although both provisions are similarly worded, our supreme court acknowledged in *Wallace* that we "nonetheless apply an independent analysis when interpreting provisions in our own [C]onstitution." *Wallace v. State*, 905 N.E.2d 371, 377-78 (Ind. 2009), *reh'g denied*. "The Indiana Constitution has unique vitality, even where its words parallel federal language." *Id*. at 378 (quoting *State v. Gerschoffer*, 763 N.E.2d 960, 965 (Ind. 2002)). As such, "[w]hen we interpret language in our state [C]onstitution substantially identical to its federal counterpart, 'we may part company with the interpretation of the Supreme Court of the United States or any other court based on the text, history, and decisional law elaborating the Indiana constitutional right.'" *Id*. (quoting *Ajabu v. State*, 693 N.E.2d 921, 929 (Ind. 1998)). "When interpreting similarly worded provisions in the Indiana Constitution, we often rely on federal authority to inform our analysis, even though the outcome may be different. *Id*. (quoting *Collins v. Day*, 644 N.E.2d 72, 75 (Ind. 1994)).

[17] Here, the State does not dispute that the application of subsection 4(e) creates an *ex post facto* effect as to these Appellees. Each Appellee committed his third HTV-qualifying offense prior to the enactment of the statutory amendment, and received a judgment on the offense after the amendment took effect. Calculating the ten-year term for the HTV determination based on the guideline

enacted in subsection 4(e)—the date of the offense—the BMV suspended Appellees' driving privileges for a period of ten years. *See* I.C. § 9-30-10-4(b), (e); -5(b).

[18] We have previously stated that the constitutional prohibitions against *ex post facto* criminal sanctions require that criminal proceedings be governed by the statutory provision in effect at the time of the offense. *Settle v. State*, 709 N.E.2d 34, 35 (Ind. Ct. App. 1999). Applying this well-established legal adage, we should apply the version of I.C. § 9-30-10-4 in effect at the time of the commission of the third triggering HTV-offense. However, we have noted that the *ex post facto* clause "'does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.'" *Hayden v. State*, 771 N.E.2d 100, 102 (Ind. Ct. App. 2002) (quoting *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)), *trans. denied*. The clause is not designed "to limit legislative control of remedies and modes of procedure which do not affect matters of substance." *Id*. "Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*." *Id*.

[19] Our first task then is to determine whether our General Assembly's amendment of I.C. § 9-30-10-4(e) is procedural or substantive for purposes of the *ex post facto* provisions of both the Indiana and United States Constitutions. We have previously noted that "'[p]rocedural, adjective or remedial law is that portion of the law which prescribes the method of enforcing a right or obtaining a redress for the invasion of that right. Substantive law, on the other hand, is that

portion of the law which creates, defines and regulates rights.'" *Id*. (quoting *State v. Fletcher*, 717 P.2d 866, 870 (Ariz. 1986)). "An amendment is 'procedural in nature for purposes of the *ex post facto* doctrine, and may be applied to crimes committed before the effective date' if it 'neither changes the elements of the crime nor enlarges its punishment.'" *Weaver v. State*, 845 N.E.2d 1066, 1070 (Ind. Ct. App. 2006) (quoting *Ritchie v. State*, 809 N.E.2d 258, 264 (Ind. 2004), *reh'g denied, cert. denied* 546 U.S. 828 (2005)), *trans. denied*.

[20] In *Ramon v. State*, 888 N.E.2d 244, 249 (Ind. Ct. App. 2008), the State sought to amend its information, charging Ramon with Class A felonies instead of Class B felonies. *Id*. In light of the supreme court's ruling in *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007),[2] the trial court denied the State's proposed amendment as untimely. *Id*. Seven days prior to Ramon's trial, our legislature amended I.C. § 35-34-1-5 and the trial court granted the State's motion to reconsider its request to amend the charging information, charging Ramon with Class A felonies. *Id*. After Ramon was found guilty of the Class A felonies, he appealed, claiming an *ex post facto* application of the legislative amendment. *Id*. at 250. This court held that the application of the revised Indiana Code section 35-34-1-5 did not violate the *ex post facto* provisions of the Indiana and United

---

[2] In *Fajardo*, decided in January 2007, our supreme court interpreted I.C. § 35-34-1-5, which addresses the amendment of charges, as requiring that matters of substance be amended no later than thirty days before the omnibus date. *Fajardo*, 859 N.E.2d at 1208. On May 8, 2007, a revision of I.C. § 35-34-1-5 became effective, essentially codifying pre-*Fajardo* law, in which amendments of charges related to matters of substance are allowed at any time before trial as long as the amendment does not prejudice the substantial rights of the defendant. *See* P.L. 178-2007, SEC. 1, eff. May 8, 2007.

States Constitutions because the statutory amendment was procedural. *Id*. at 252. In reaching this determination, we concluded that the revised statute defined the procedures the State must follow in order to amend a charging information and that the revision did not create any new crimes, change the elements of any crime or alter any sentencing statutes. *Id*.

[21] Similarly, in *Hurst v. State*, 890 N.E.2d 88, 95 (Ind. Ct. App. 2008), *trans. denied*, this court took *Ramon*'s analysis one step further and found that strong and compelling reasons existed favoring retroactive application of the revised version of I.C. § 35-34-1-5(b). In *Hurst*, we observed the following:

> For over twenty years prior to *Fajardo*, case law regularly permitted amendments related to matters of substance as long as the substantial rights of the defendant were not prejudiced, regardless of whether the amendments were untimely under I.C. § 35-34-1-5(b). On January 16, 2007, our [s]upreme [c]ourt changed course and held that the statute clearly required amendments of substance to be made not less than thirty days before the omnibus dates, even if a defendant's substantial rights were not prejudiced by the amendment. The legislature immediately responded to *Fajardo* by amending the statute, effective May 8, 2007, to reflect the pre-*Fajardo* law (*i.e.*, amendments of substance permitted anytime before trial so long as the defendant's substantial rights are not prejudiced). Thus, *Fajardo* was superseded by statute in less than four months. This prompt return to pre-*Fajardo* law indicates urgency in the legislature's desire to negate the effects of *Fajardo*. Though the legislature did not expressly provide for retroactive application of the amended statute, we are confident that this was the clear intent of such legislation.

*Id.* (internal citations omitted). *See also Gomez v. State*, 907 N.E.2d 607 (Ind. Ct. App. 2009), *trans. denied*.

[22] Likewise, here, our legislature explained the "method of enforcing" the HTV determination through its addition of subsection 4(e). *See Hayden*, 771 N.E.2d at 102. Upon the 2012 addition of the subsection, the legislature clarified that I.C. § 9-30-10-4 is not triggered at the time of the commission of the offense, but at the time of the judgment for the third qualifying HTV offense. Prior to the amendment, the statute provided that a person who obtains three qualifying judgments within ten years is an HTV subject to a ten year administrative suspension of driving privileges. I.C. § 9-30-10-4(b)(2010). The added subsection 4(e) merely established that even though the application is triggered by the judgment of the third qualifying offense, the dates of the offenses are to be used to calculate whether the qualifying events occurred within a ten-year period. *See* I.C. § 9-30-10-4(b),(e) (Supp. 2013). Although as applied to Appellees, subsection 4(e) became effective after the commission of the third qualifying offense but prior to its judgment, the amendment "neither change[d] the elements of the crime nor enlarge[d] its punishment.'" *Weaver*, 845 N.E.2d at 1070. The fact that an element of the HTV determination "'draws upon antecedent facts'" does not make I.C. § 9-30-10-4(e) an *ex post facto* law. *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001) (quoting *Cox v. Hart*, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332 (1922)). *See also Funk v. State*, 427 N.E.2d 1081, 1087 (Ind. 1981) ("That prior crimes are involved in an habitual offender prosecution does not change the fact [that] the penalty is imposed only for the last crime committed."); *Simmons v. State*, 962 N.E.2d 86, 89-90 (Ind. Ct. App. 2011) (The enhancement of an OWI conviction to a Class C felony based on an enhancement statute enacted after his prior conviction for OWI causing

death means that "Simmons is not being re-punished for his prior crime, nor has the penalty for his prior crime been enhanced. He is simply being punished as a recidivist based upon his most recent act of OWI").

[23] The HTV statute aims to regulate the dangerous conduct of the driver, and is a "protection of the remaining public using the highways." *Hamilton v. State ex rel. Van Natta*, 323 N.E.2d 659, 660 (Ind. Ct. App. 1975), *reh'g denied, appeal dismissed*, 424 U.S. 901 (1976) (quoting *State ex rel. Van Natta v. Rising*, 310 N.E.2d 873, 875 (Ind. 1974)). Because the addition of subsection 4(e) to the HTV statute only sought to clarify the calculation method used in the HTV determination, it did not amend the offense nor alter the penalty and was procedural in nature. *See Weaver*, 845 N.E.2d at 1070. Even though, as here, where the statutory amendment "may work to the disadvantage of a defendant," this hardship does not propel a procedural change into the *ex post facto* realm. *Hayden,* 771 N.E.2d at 102. Accordingly, we reverse the trial court's judgment.

## CONCLUSION

[24] Based on the foregoing, we conclude that Indiana Code section 9-30-10-4(e), which requires the BMV to use the dates of the offenses rather than the dates of the judgments in determining a person's status as a HTV, is a procedural amendment which does not violate the *ex post facto* clauses of the Indiana and United States Constitutions.

[25] Reversed.

Altice, J. concurs

Brown, J. dissents with separate opinion

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kent W. Abernathy, Commissioner of the Indiana Bureau of Motor Vehicles and Bernard Carter, Prosecuting Attorney for Lake County, | Court of Appeals Case No. 45A03-1503-MI-73 |
| *Appellants-Respondents*, | |
| v. | |
| Eric C. Gulden, Jeremy Crawford, David J. Klahn, John P. Martin, and James M. Panozzo, | |
| *Appellees-Petitioners.* | |

**Brown, Judge, dissenting.**

I respectfully dissent from the majority's conclusion that the addition of subsection (e) to the habitual violators statute at Ind. Code § 9-30-10-4 was procedural in nature. The majority concludes that the amendment did not

change the elements of the habitual violator offense, but rather sought only to clarify the calculation method used in the habitual violator determination. I disagree.

[29] Prior to the enactment of subsection (e), Ind. Code § 9-30-10-4 provided only that a person who obtained three qualifying judgments within ten years was a habitual violator. Ind. Code § 9-30-10-4(b) (2010). Under that version of the statute, based on the dates judgments were entered on their qualifying offenses, Appellees would not have been deemed or determined to be habitual violators. Following the enactment of subsection (e), the dates of the offenses, rather than the dates of the judgments, are used in "determining the number of judgments accumulated within a ten (10) year period" and thus the elements of the habitual offender offense are changed. Ind. Code § 9-30-10-4(e) (2012) (enacted by Pub. L. No. 125-2012, § 349). As the elements are different, this change was not merely procedural in nature.

[30] As the majority states, an amendment is procedural for *ex post facto* purposes, if it "neither changes the elements of the crime nor enlarges its punishment." *Ritchie v. State*, 809 N.E.2d 258, 264 (Ind. 2004), *reh'g denied*, *cert. denied*, 546 U.S. 828, 126 S. Ct. 42 (2005). As applied to Appellees, the enactment of subsection (e) resulted in determinations, specifically that Appellees were habitual violators, that were not and could not have been made prior to the change in the statute. While the majority may be correct that subsection (e) clarifies the calculation method used to determine whether persons are habitual violators under Ind. Code § 9-30-10-4, that clarification as applied to Appellees

defined persons as habitual violators who would not have been previously defined as such. I believe that the enactment of subsection (e) changed the elements of the habitual violator offense as to Appellees, that the amendment was not procedural in nature, and that as applied to Appellees the amendment violates the prohibition on *ex post facto* laws in the Indiana and United States Constitutions.

[31] For the foregoing reasons, I would affirm the rulings of the trial court.