## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 25 2017, 8:01 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Richard Kulbieda
Arizona City, Arizona

ATTORNEY FOR APPELLEE

Christopher L. Nusbaum
Dale Huffman & Babcock
Bluffton, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Richard Kulbieda, <br> *Appellant-Defendant/Counter-Plaintiff,* <br><br> v. <br><br> Sara Alford and Cory Day, <br> *Appellees-Plaintiffs/Counter-Defendants.* | May 25, 2017 <br><br> Court of Appeals Case No. 75A05-1609-SC-2100 <br><br> Appeal from the Starke Circuit Court <br><br> The Honorable Jeanene Calabrese, Magistrate <br><br> Trial Court Cause No. 75C01-1604-SC-152 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant/Counter-Plaintiff, Richard Kulbieda (Landlord), appeals the small claims court's Judgment in favor of Appellees-Plaintiffs/Counter-Defendants, Sara Alford and Cory Day (collectively, the Tenants).

We affirm.

# ISSUES

The Landlord raises three issues on appeal, one of which we find dispositive and which we restate as: Whether the small claims court erred in entering judgment for the Tenants.

The Tenants also raise one issue on cross-appeal, which we restate as: Whether the Tenants are entitled to an award of appellate attorney fees.

# FACTS AND PROCEDURAL HISTORY[1]

On March 1, 2015, the Landlord and the Tenants entered into a Lease Agreement, pursuant to which the Tenants agreed to rent the dwelling located

---

[1] At the outset, we acknowledge the role that small claims courts have in "dispensing speedy justice between the parties according to the rules of substantive law." Ind. Small Claims Rule 8(A). Small claims proceedings are informal and not subject to the usual "rules of practice, procedure, pleadings or evidence except provisions relating to privileged communications and offers of compromise." S.C. R. 8(A). However, in this case, the Tenants—as the plaintiffs—did not testify or present any evidence beyond the Lease Agreement. Rather, their attorney narrated the Tenants' version of events, and even were we to presume that attorneys are permitted to testify under the relaxed rules of small claims proceedings, the Tenants' attorney was not sworn in as a witness. *See* S.C. R. 8(B) ("All testimony shall be given under oath or affirmation."). Nevertheless, the Landlord never objected and has not raised this as an issue on appeal. Still, in order to set forth the facts, we rely on the Lease Agreement, the pleadings transmitted to our court (which consist of the Landlord's Counterclaim and the Tenants' Answer thereto as we have not been provided with a copy of the Tenant's initial Notice of Claim), and the sparse testimony of the Landlord, in addition to inferences derived

at 1020 N. 1025 E., Knox, Starke County, Indiana (the Property). The Lease Agreement commenced on March 11, 2015, and was set to end on March 11, 2016. Upon expiration, the Lease Agreement would automatically convert to "a month-to-month agreement" unless either party notified the other "in writing at least [thirty] days prior to expiration that they do not wish this Agreement to continue on any basis." (Appellant's App. Vol. II, p. 6). In addition to a $900.00 security deposit, the Tenants agreed to pay monthly rent in the amount of $950.00.

[6] In December of 2015, the Tenants notified the Landlord that they had purchased a home and would not be renewing the Lease Agreement when it expired the following March. The Tenants advised that they would soon begin the process of moving their belongings over to their new home. However, the Tenants indicated that they understood their obligation to pay rent through the end of the Lease term and stated that they would continue to check on the Property. In early January of 2016, the Tenants informed the Landlord that they had moved into their new home.

[7] On January 14, 2016, the Landlord traveled from his home in Arizona to inspect and secure the Property. According to the Landlord, he spent two weeks at the Property—cleaning, demolishing the fire pit that the Tenants had

therefrom. We recognize that the Tenants explicitly denied several of the material allegations contained in the Landlord's Counterclaim, especially to the extent that factual allegations implied certain legal conclusions. However, based on the Tenants' attorney's arguments, we believe that our recitation of the facts sets forth the complete and undisputed background information necessary to resolve this appeal.

built in the backyard, and attempting to re-let the premises. On January 28, 2016, the Landlord signed a new lease with different tenants. Soon after the new renters moved in, the Tenants went to the Property to retrieve their mail and check on the house and were surprised to discover that there were new tenants in light of the fact that they had paid their rent for the month of February 2016 and were still operating under the terms of the Lease Agreement. Accordingly, the Tenants requested that the Landlord return half of the rent they paid for January, the full amount of rent paid for February, and their full security deposit. At some point, the Landlord refunded the $950.00 paid for February 2016 rent, but the Landlord refused to return the security deposit, claiming that he had "incurred a lot of unnecessary extra expense" by the Tenants improperly moving out of the Property without notice. (Appellees' App. Vol. II, p. 6).

[8]     On April 18, 2016, the Tenants filed a Notice of Claim, presumably seeking a refund of their $900.00 security deposit, in addition to attorney fees and court costs. On May 18, 2016, the Landlord filed a Counterclaim, alleging breach of contract. The Landlord sought a judgment of $3,191.59 for costs incurred in securing, cleaning, and re-renting the premises. These costs included the Landlord's round-trip airfare, rental car, lost wages, cleaning charges, extra advertising, and landscaping work. On July 1, 2016, the Tenants filed an Answer and Affirmative Defenses to the Landlord's Counterclaim, asserting, in part, that the Landlord had failed to state a claim upon which relief could be granted. On August 10, 2016, the small claims court conducted a bench trial, at

the conclusion of which the small claims court issued a Judgment in favor of the Tenants. Specifically, the small claims court ordered the Landlord to return the Tenants' security deposit of $900.00 and to pay attorney fees of $1,500.00, for a total recovery of $2,400.00 plus court costs.

The Landlord now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Judgment for the Tenants*

The Landlord challenges the small claims court's Judgment, awarding the Tenants a refund of their security deposit and attorney fees and denying the Landlord's counterclaim for damages. "Judgments in small claims actions are 'subject to review as prescribed by relevant Indiana rules and statutes.'" *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1067 (Ind. 2006) (quoting S.C. R. 11(A)). For facts determined in a bench trial, the clearly erroneous standard set forth in Indiana Trial Rule 52(A) applies, with due regard given to the opportunity of the small claims court to assess the credibility of witnesses. *Id.* "[T]his deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." *Id.* at 1068. Here, while the small claims court orally noted several findings, it did not issue written factual findings and conclusions thereon. Where no findings are made, "we presume the judgment is based on findings supported by the evidence and will affirm the judgment "if it can be sustained on any legal theory supported by the evidence." *Rueth v. Quinn*, 659

N.E.2d 684, 687 (Ind. Ct. App. 1996), *trans. denied*. Our court does not reweigh evidence or assess witness credibility, and we consider only the evidence most favorable to the judgment together with all reasonable inferences derived therefrom. *Id.*

[11] This case centers on the application of the landlord-tenant statutes governing security deposits. Indiana Code section 32-31-3-12(a) provides that upon the termination of a rental agreement, a landlord must return the tenant's security deposit, less any amount applied to "(1) the payment of accrued rent; (2) the amount of damages that the landlord has suffered or will reasonably suffer by reason of the tenant's noncompliance with law or the rental agreement; and (3) unpaid utility or sewer charges that the tenant is obligated to pay under the rental agreement." These deductions must be

> itemized by the landlord with the amount due in a written notice that is delivered to the tenant not more than forty-five (45) days after termination of the rental agreement and delivery of possession. The landlord is not liable under this chapter until the tenant supplies the landlord in writing with a mailing address to which to deliver the notice and amount prescribed by this subsection. Unless otherwise agreed, a tenant is not entitled to apply a security deposit to rent.

Ind. Code § 32-31-3-12(a). The landlord's failure to comply with these requirements entitles the tenant to "recover all of the security deposit due the tenant and reasonable attorney's fees." I.C. § 32-31-3-12(b). In addition, both the landlord and the tenant, if so entitled, may seek "other damages." I.C. § 32-31-3-12(c).

[12] Indiana Code section 32-31-3-13 more specifically sets forth the purposes for which a security deposit may be used:

> (1) To reimburse the landlord for actual damages to the rental unit or any ancillary facility that are not the result of ordinary wear and tear.
>
> (2) To pay the landlord for:
>
> > (A) all rent in arrearage under the rental agreement; and
> >
> > (B) rent due for premature termination of the rental agreement by the tenant.
>
> (3) To pay for the last payment period of a residential rental agreement if a written agreement between the landlord and the tenant stipulates that the security deposit will serve as the last payment of rent due.
>
> (4) To reimburse the landlord for utility or sewer charges paid by the landlord that are:
>
> > (A) the obligation of the tenant under the rental agreement; and
> >
> > (B) unpaid by the tenant.

[13] Indiana Code section 32-31-3-14 further details the landlord's requirements for sending the tenant an itemized list of deductions:

> Not more than forty-five (45) days after the termination of occupancy, a landlord shall mail to a tenant an itemized list of

damages claimed for which the security deposit may be used under section 13 of this chapter. The list must set forth:

(1) the estimated cost of repair for each damaged item; and

(2) the amounts and lease on which the landlord intends to assess the tenant.

The landlord shall include with the list a check or money order for the difference between the damages claimed and the amount of the security deposit held by the landlord.

If the landlord fails to provide this notice of damages, the landlord essentially agrees "that no damages are due, and the landlord must remit to the tenant immediately the full security deposit." I.C. § 32-31-3-15. Moreover, in addition to the full security deposit, the landlord's failure to comply with the notice requirement renders the landlord liable to the tenant for "reasonable attorney's fees and court costs." I.C. § 32-31-3-16.

[14] The small claims court found, based on the Tenants' attorney's argument, that the Landlord failed to provide the Tenants with written notice of damages as statutorily required. On appeal, the Landlord now asserts that he did send an itemized list of damages to the Tenants via email on February 6, 2016, and, furthermore, that his obligation to send notice of the itemized damages was never triggered because the Tenants failed to provide, in writing, a mailing address for sending the notice pursuant to Indiana Code section 32-31-3-12(a). Although he mentioned the notice in his counterclaim, the Landlord did not dispute the Tenants' contention that they never received an itemized notice,

despite the Landlord's opportunity to do so during the bench trial; nor did the Landlord attempt to admit a copy of such notice into evidence. The Landlord similarly failed to argue that the Tenants never provided their new address for mailing the notice. Thus, he cannot proceed with these arguments on appeal.[2] *See Weida v. City of West Lafayette*, 896 N.E.2d 1218, 1227 (Ind. Ct. App. 2008) (noting that, as a general rule, a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the lower court).

[15] Moreover, the security deposit statute plainly states that security deposits may only be applied for "actual damages" that "are not the result of ordinary wear and tear"; accrued rent; the last installment of rent (if so agreed by parties); and certain utility charges. I.C. § 32-31-3-13. *See Sholes v. Sholes,* 760 N.E.2d 156, 159 (Ind. 2001) ("Courts are obliged to respect the plain language of a statute."). In addition, the small claims court pointed out that the Lease Agreement specifically limits the use of the security deposit "to cover any possible damage to the [P]roperty." (Appellant's App. Vol. II, p. 6). *See Ryan v. Lawyers Title Ins. Corp.*, 959 N.E.2d 870, 875 (Ind. Ct. App. 2011) ("The unambiguous language of a contract is conclusive upon the parties to the

---

[2] Moreover, the Landlord has included several "exhibits" in his appellate appendix, including emails that were exchanged with the Tenants regarding the move-out and dispute over the security deposit, including the purported itemized list of damages. None of these documents were presented to the small claims court, let alone admitted, during the bench trial. Therefore, we do not consider these documents on appeal. *Saler v. Irick*, 800 N.E.2d 960, 970 n.7 (Ind. Ct. App. 2003) ("[N]ew evidence may not be submitted to the court for the first time upon appeal.").

contract and upon the courts."). Accordingly, pursuant to both statute and the terms of the Lease Agreement, the Landlord had no right to withhold the Tenants' security deposit to pay for travel accommodations (airfare and rental car), the wages he lost by virtue of spending two weeks in Indiana, and advertising expenses.

[16] The Landlord also argued during the bench trial that he expended money to clean the house and remedy some landscaping issues caused by the Tenants, which are chargeable damages against the security deposit. In response, the small claims court asked, "[W]here are the bills . . . [t]o support that[?]" The Landlord answered,

> I don't[] have 'em. It's just my labor that was there. 'Cause I was here for two (2) weeks. I was cleaning and everything and—uh—I had to hire the lady down the road there to clean out the range, refrigerator and do the windows. And she even admitted—[the Tenants] even admitted that [they] didn't clean, you know, so. You know, I feel we're being fair about this. I'm not trying to gouge or take advantage of [them].

(Tr. pp. 12-13). When the small claims court again asked about his cleaning expenses, the Landlord stated,

> Well, I paid for—let's see, well I think I paid a hundred and fifty (150) out of my own pocket, plus my labor of—of having to—I helped over there—clean everything. And we had to shampoo the carpet; that was a hundred and fifty (150). And—um—you know, and then I was here—and but again, I was basing my expenses of having to come here to—to—to—to you know, to take care of the home.

(Tr. p. 13).

[17] While the Landlord presented no specific evidence of his purported landscaping costs, he did testify that he spent at least $150.00 to clean the range, refrigerator, windows, and carpet. It is unclear from the record whether the small claims court found a lack of credibility with respect to the Landlord's cleaning damages based on his failure to present documented evidence of these costs at the bench trial. Nonetheless, Indiana Code section 32-31-3-13(1) provides that a security deposit may be used for actual damages to the rental unit that are not the result of ordinary wear and tear, and the Lease Agreement specifically provides that a cleaning fee may be deducted as damages from the security deposit if the Tenants failed to thoroughly clean the premises by cleaning "appliances, windows, window blinds, bathrooms, ceiling fans, shampooing of carpet, etc." (Appellant's App. Vol. II, p. 6). *See Miller v. Geels*, 643 N.E.2d 922, 928 (Ind. Ct. App. 1994) ("[A] rental unit which tenants are required to clean under a lease agreement but which the tenants have failed to clean has been damaged. . . . The landlord may pursue a claim for cleaning expenses under the lease."), *trans. denied*. Here, the Lease Agreement provides that the cleaning expenses should have been deducted from the security deposit (as opposed to pursuing "other damages" pursuant to Indiana Code section 32-31-3-12(c)). Therefore, such "damages" must have been included in the itemized notice required by Indiana Code sections 32-31-3-12 and 14. As already discussed, the Landlord has waived his argument that he submitted the statutorily required notice of damages, and he did not dispute the Tenants'

attorney's claim that no such notice was sent. Accordingly, the small claims court properly ordered the Landlord to remit the Tenants' $900.00 security deposit, and because of the Landlord's failure to comply with the security deposit statute, the Tenants were also entitled to an award of attorney fees. *See* I.C. § 32-31-3-12(b).[3]

## II. *Appellate Attorney Fees*

[18] On cross-appeal, the Tenants claim that they are entitled to an award of appellate attorney fees because the Landlord "needlessly filed this claim and made accusations against [their attorney]." (Appellees' Br. p. 10). Pursuant to Indiana Appellate Rule 66(E), our court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith." Such damages may include attorney fees. However, "[o]ur discretion to award attorney fees under Indiana Appellate Rule 66(E) is limited . . . . to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." *Thacker v. Wentzel*, 797 N.E.2d 342, 346 (Ind. Ct. App. 2003). We are mindful to "use extreme restraint when exercising this power because of the potential chilling effect upon the exercise of the right to appeal."

---

[3] The Landlord also claims that, even though the costs of his airfare and rental car could not be deducted from the security deposit, he still should have received a judgment for such expenses based on the fact that they were "incurred due to [the Tenants] not giving a proper move out notice." (Appellant's Br. p. 20). The Landlord neither cites any authority or contractual provision nor otherwise presents a cogent argument to support his claim and therefore has waived the issue. Ind. Appellate Rule 46(A)(8)(a). The Landlord has also waived his claim that the Tenants' attorney somehow tampered with the contents of his Counterclaim as there is no basis for such an accusation in the record and because the Landlord has not developed a cogent argument. App. R. 46(A)(8)(a).

*Id.* Thus, "[a] strong showing is required to justify an award of appellate damages, and the sanction is not imposed to punish mere lack of merit, but something more egregious." *Helmuth v. Distance Learning Systems Ind., Inc.*, 837 N.E.2d 1085, 1094 (Ind. Ct. App. 2005).

[19] Claims for appellate attorney fees are categorized as either "substantive" or "procedural" bad faith claims. *Thacker*, 797 N.E.2d at 346. For substantive bad faith claims, the party seeking fees must demonstrate "that the appellant's contentions and arguments are utterly devoid of all plausibility." *Id.* On the other hand, procedural bad faith "occurs when a party flagrantly disregards the form and content requirements of the rules of appellate procedure, omits and misstates relevant facts appearing in the record, and files briefs written in a manner calculated to require the maximum expenditure of time both by the opposing party and the reviewing court. Even if the appellant's conduct falls short of that which is 'deliberate or by design,' procedural bad faith can still be found." *Id.* at 346-47 (internal citation omitted).

[20] In seeking attorney fees, the Tenants assert that

> [f]ollowing [the Landlord's] failure to present any evidence at the [bench trial] it cannot be said that any reasonable attorney would consider his appeal of this case worthy of litigation. To the contrary, the appropriate conclusion, coupled with his nearly defamatory claims against [the Tenants' attorney], is that [the Landlord's] [a]ppeal is meritless, in bad faith, aimed only [at] causing harassment with the purpose to delay his judg[]ment.

(Appellees' Br. pp. 10-11). Thus, it appears that the Tenants have set forth a substantive bad faith claim.

[21] It is well established that *pro se* litigants, such as the Landlord, are held to the same standards as licensed attorneys. *Thacker*, 797 N.E.2d at 345. As such, *pro se* litigants may be liable for appellate attorney fees when they disregard the rules in bad faith. *In re Estate of Carnes*, 866 N.E.2d 260, 267 (Ind. Ct. App. 2007). Here, the Landlord's *pro se* status is no excuse for improperly attempting to introduce new evidence on appeal or raising unfounded accusations against the Tenants' attorney. Nevertheless, mindful of our duty to utilize extreme restraint, we decline to exercise our discretion to award appellate attorney fees. *Both* parties did a poor job of presenting evidence during the bench trial, which has made our review more difficult. Despite the lack of evidence in the record that this court may properly consider, it is clear that the Landlord did not file his appeal in bad faith based on his belief that he had complied with the notice requirements of the security deposit statute. In fact, had the Landlord attempted and succeeded in admitting the document that he now claims to be the itemized notice of damages, he may have partially prevailed in this matter. Therefore, while we affirm the small claims court's Judgment, we do not order the award of appellate attorney fees.

## CONCLUSION

[22] Based on the foregoing, we conclude that the small claims court properly ordered the Landlord to pay the Tenants the sum of their security deposit and

attorney fees. We further conclude that the Tenants are not entitled to an award of appellate attorney fees.

[23] Affirmed.

[24] Najam, J. and Bradford, J. concur